638 A.2d 953

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Larry E. LOUDEN, Appellee.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Helen LOUDEN, Appellee.**

Supreme Court of Pennsylvania.

Argued May 7, 1991.

Decided March 11, 1994.

Bradford H. Charles, Dist. Atty., for appellant.

Robert Barr Keys, Lebanon, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## *OPINION*

PAPADAKOS, Justice.*

In this appeal, we must address the issue left unresolved in our recent decisions of *Commonwealth v. Ludwig,* 527 Pa. 472, 594 A.2d 281 (1991) and *Commonwealth v. Lohman,* 527 Pa. 492, 594 A.2d 291 (1991). In both *Ludwig* and *Lohman,* we held that the use of closed circuit television to transmit the testimony of a witness violated Article I, Section 9 of the Pennsylvania Constitution. However, neither of those appeals

* Reassigned to this author.

addressed the constitutionality of 42 Pa.C.S. §§ 5984 or 5985(a) since both sections were adopted subsequent to the trials in *Ludwig* and *Lohman.* This appeal presents us with the opportunity to address specifically the constitutionality of both provisions. Because we find that §§ 5984 and 5985(a) fail to limit the use of video tape in closed circuit television to those instances in which the accused's right to face to face confrontation has been otherwise satisfied, we must hold both provisions unconstitutional. Subjective fears of the witness, without more, are insufficient to restrict the accused's constitutional right to confront a witness face to face. Furthermore, in light of our disposition of the constitutional issue requiring a new trial for the Appellees, we must address the issue raised by the Commonwealth regarding the suppression of the tapes recorded from the residence adjacent to Appellees' residence.

In July of 1986, Appellee-wife, Helen Louden (hereinafter referred to as wife), applied for and was granted state certification to operate a day care center in her home. At the time of certification, wife resided with her Appellee-husband, Larry E. Louden, Sr. (hereinafter referred to as husband), in one-half of a double house with a common party wall. The husband's mother and step-father (Kuloviches) resided in the other half of the double house. Because Mrs. Kulovich was ill, husband's sister, Carol Wolfe, frequented the Kulovich home daily. Beginning in July of 1986, while visiting the Kulovich home, Ms. Wolfe began hearing, from the adjoining house, adults using obscene language, directing obscenities at particular children, and arguing over explicit sexual issues. Furthermore, Ms. Wolfe would hear threats being made at the children followed by smacking noises and children crying and screaming. At some undetermined point of time, the children who attended the Appellees' day care center began to misbehave and to act violently. Children also became clingy and withdrawn, and extremely wary of adult males. Some children also experienced nightmares.

During the fall of 1986, Ms. Wolfe became very concerned about the welfare of the children visiting the day care center and contacted various state agencies and employees. In addi-

tion, she contacted three police officers of the North Cornwall Township Police Department, Officers Tomkins, Basti and Wlazlak. Because Ms. Wolfe was advised that no action could be taken against the Appellees unless parents complained or a child was hurt, Ms. Wolfe decided to use a tape player to obtain additional evidence which would substantiate her complaints. As such, she placed her tape recorder in the hallway of her mother's home on those occasions when she heard activity which caused her to become concerned for the welfare of the children attending Appellees' day care center.

Thereafter, based upon Ms. Wolfe's observations and independent police observations, the Appellees were arrested for endangering the welfare of a child, 18 Pa.C.S. § 4304. Both the Commonwealth and the Appellees filed pre-trial motions. In their motion, the Appellees requested that the tape recordings made by Ms. Wolfe be suppressed, while the Commonwealth sought to have three child witnesses testify by means of videotape depositions under 42 Pa.C.S. § 5985.

As to Appellees' suppression motion, the trial court initially denied the motion but upon reconsideration and in light of the Superior Court's decision in *Commonwealth v. Henlen,* 368 Pa.Super. 1, 533 A.2d 457 (1987), the trial judge suppressed the tape recordings. The Commonwealth did not appeal this ruling since the trial judge's determination did not effectively put the Commonwealth out of court. *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985).

## PART A

### CONSTITUTIONALITY OF 42 PA.C.S. §§ 5984 and 5985

█ With respect to the Commonwealth's request to videotape the testimony of three child witnesses, ages 7 to 9, the trial court conducted a hearing on April 26, 1988. During that hearing, the parents of those three children as well as a child therapist testified. The parents complained that their children should not have to testify at trial before the jury and the Appellees because their children would be intimidated by the presence of strangers, such as the jury and spectators, as well

as the Appellees. The therapist, who was treating at least one of the child witnesses, testified that if required to testify in open court, the children would have great difficulty speaking in a large room with many strangers. The therapist opined that since the jurors would be strangers, closing the court to all spectators would not alleviate the difficult time the children would have testifying before a jury. In essence, the therapist testified that:

> The presence of people they do not know and who might challenge their opinions and feelings might make the children extremely anxious.

N.T., April 26, 1988, at p. 22.

Furthermore, the wife testified at the April 26, 1988, hearing that she had seen several children at monthly Cub Scout pack meetings and even supervised them at pack activities. On those occasions, the children did not demonstrate any fear, hostility or anxiety towards either of the Appellees.

At the conclusion of the testimony of the parents, therapist and wife, counsel for the wife requested that the trial court individually interview each prospective child witness in an *in camera* proceeding to determine, what, if any, specific harm would occur as a result of any child testifying in open court. The trial court declined to grant this request.

Notwithstanding the trial court's failure to interview or observe each prospective child witness, the trial court found "good cause" as defined under §§ 5984 and 5985 of the Act to permit the children to testify by videotape or closed circuit television.

In accordance with the trial court's ruling and after the trial commenced, testimony of each child was taken by videotape in a room at the Lebanon County Children and Youth Services offices with only the child, one parent, a court clerk, a court stenographer, defense counsel, the district attorney and trial judge present. Although the Appellees themselves were not present, they were seated in an adjacent room. The child witness could not see the Appellees but the Appellees could observe the child witness and the events from a closed circuit

television. Finally, at all times, the Appellees were able to communicate with their attorneys. The videotapes were then shown to the jury during the Commonwealth's case in chief.

On May 8, 1988, the jury convicted Appellees for endangering the welfare of a child. Appellees filed a motion in arrest of judgment and for new trial. Concluding that the videotape procedure followed by the trial court infringed upon the Appellees' "right to confront" their accusers, the trial court granted Appellees a new trial. We then accepted jurisdiction under 42 Pa.C.S. § 722(6) because the trial court declared an act of the General Assembly to be unconstitutional.

On February 21, 1986, the legislature enacted two provisions relating to videotaped depositions and closed circuit testimony of a child victim or a child material witness. Both provisions permitted the avoidance of direct, live testimony upon "good cause shown".

§ 5984. Videotaped depositions

(a) Depositions—In any prosecution involving a child victim or child material witness, the court may, for good cause shown, order the taking of a videotaped deposition of the victim or material witness on motion of the child through his parent or guardian, or where applicable, the child's advocate or the attorney for the Commonwealth. Such videotaped depositions, if taken for use at the preliminary hearing, may be used only at the preliminary hearing in lieu of the testimony of the child. If such videotaped deposition is taken for use at trial, it may be used only at the trial in lieu of the testimony of the child. The depositions shall be taken before the court in chambers or in a special facility designed for taking the depositions of children. Only the attorneys for the defendant and for the Commonwealth, persons necessary to operate the equipment, a qualified shorthand reporter and any person whose presence would contribute to the welfare and well-being of the child, including persons designated under section 5983 (relating to rights and services), may be present in the room with the child during his deposition. The court shall permit the defendant to observe and hear the testimony of the child in

person but shall ensure that the child cannot hear or see the defendant. Examination and cross-examination of the child shall proceed in the same manner permitted at trial. The court shall make certain that the defendant and defense counsel have adequate opportunity to communicate for the purposes of providing an effective defense.

42 Pa.C.S. § 5984.

\*     \*     \*     \*     \*     \*

§ 5985.  Testimony by closed-circuit television

(a) Closed-circuit television.—The child victim or material witness, through his parent or guardian, or, where applicable, the child's advocate or the attorney for the Commonwealth may move, for good cause shown, that the testimony of a child be taken in a room other than the courtroom and televised by closed-circuit equipment to be viewed by the court and the finder of fact in the proceeding. Only the attorneys for the defendant and for the Commonwealth, the court reporter, the judge, the persons necessary to operate the equipment and any person whose presence would contribute to the welfare and well-being of the child, including persons designated under section 5983 (relating to rights and services), may be present in the room with the child during his testimony. The court shall permit the defendant to observe and hear the testimony of the child in person but shall ensure that the child cannot hear or see the defendant. The court shall make certain that the defendant and defense counsel have adequate opportunity to communicate for the purposes of providing an effective defense. Examination and cross-examination of the child shall proceed in the same manner as permitted at trial.

42 Pa.C.S. § 5985.

Both provisions are challenged as a violation of Article I, Section 9 of the Pennsylvania Constitution. Specifically, Appellees argued successfully before the court en banc that these provisions violated our state constitutional guarantee of a "face-to-face" confrontation.

In addressing this constitutional challenge, we are cognizant of our standard of review. In *James v. SEPTA,* 505 Pa. 137, 477 A.2d 1302 (1984), we stated:

There is, of course, a presumption of constitutionality attaching to any lawfully enacted legislation. Should the constitutionality of such legislation be challenged, the challenger must meet the burden of rebutting the presumption of constitutionality by a clear, palpable and plain demonstration that the statute violates a constitutional provision. (Citations omitted.)

505 Pa. at 142, 477 A.2d at 1304.

Furthermore, we have held that in interpreting our state constitution we are not bound by the United States Supreme Court's interpretation of similar federal constitutional provisions. *See Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991); *Commonwealth v. Melilli,* 521 Pa. 405, 555 A.2d 1254 (1989); and *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983). Instead, we have the "power to provide broader standards, and go beyond the minimum floor which is established by the federal constitution." *Edmunds,* 526 Pa. at 388, 586 A.2d at 894.

Recently, in *Commonwealth v. Ludwig,* 527 Pa. 472, 594 A.2d 281 (1991), we had the opportunity to apply these principles to a fact situation similar to that now before this Court. In *Ludwig,* we held that the confrontation clause of our state constitution did not permit the use of close-circuit television to transmit the testimony of an alleged child victim because such a procedure infringed upon a defendant's constitutional right to meet a witness face-to-face. In reaching this conclusion, we cited with approval Justice Scalia's dissent in *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

Article I, Section 9 of our state constitution does not reflect a "preference" but requires a "face-to-face" confrontation. This requirement is rooted in our belief that the framers of our state constitution were of the opinion that:

Many people possessed the trait of being loose-tongued or willing to say something behind a person's back that they

dare not or cannot truthfully say to his face or under oath in a courtroom. It was probably for this reason, as well as to give the accused the right to cross-examine his accusers and thereby enable the jury to better determine the credibility of the Commonwealth's witnesses and the strength and truth of its case, that this important added protection was given to every person accused of crime. We have no right to disregard or (unintentionally) erode or distort any provision of the constitution, especially where, as here, its plain and simple language make its meaning unmistakably clear; indeed, because of the times in which we live, we have a higher duty than ever before to zealously protect and safeguard the constitution.

*Commonwealth v. Russo,* 388 Pa. 462, 470–471, 131 A.2d 83, 88 (1957).

In *Ludwig,* we also recognized that exceptions do arise to the strict application of Article I, Section 9. However, exceptions are permissible only after the original testimony is given in the presence of the defendant with the defendant having the opportunity to face and cross-examine his accuser. In such instances, the accused has had the opportunity to confront the witnesses against him, face to face.

Finally, in *Ludwig,* we held that subjective fears of a witness without more are insufficient to restrict a defendant's important right of face-to-face confrontation.

The principles addressed and objections raised in *Ludwig* are equally applicable in this appeal. Sections 5984 and 5985 fail to guarantee the defendant's right to confront his accusers. It is clear that these provisions are intended to provide protection to a child witness. While the legislature's motive may be laudable, we cannot forget that our constitution specifically, clearly and unambiguously guarantees to an accused the right to face-to-face confrontation with his accuser. Such a constitutional right could not be more clearly enunciated. Accordingly, we hold that §§ 5984 and 5985 on their face are repugnant to our state constitution and therefore are invalid.

Because of our disposition of the constitutional issue, the Appellees will receive a new trial. As a result, it is important for us to address the suppression issue.[1]

## PART B

### SUPPRESSION OF TAPE RECORDED EVIDENCE

■ At the suppression hearing of October 16, 1987, Ms. Wolfe testified as to the circumstances leading up to her placing a tape recorder in her mother's home for the purpose of recording the Appellees' conversations within their own home. Prior to the Appellees opening their day care center, Ms. Wolfe would hear loud and explicitly sexual arguments between the Appellees. This did not concern Ms. Wolfe because she believed the arguing was the Appellees' problem and did not impact upon her. However, after Appellees opened their day care center, Ms. Wolfe believed the continuing arguing in front of small children changed her attitude towards those arguments. At this point, she testified that she contacted a representative of a Commonwealth licensing department in Harrisburg, as well as several police officers of the North Cornwall Township Police Department. Ms. Wolfe testified that she was advised that any investigation could not be started unless parents complained or a child was injured. Therefore, Ms. Wolfe embarked on her own course of action to obtain evidence to convince the proper authorities that the Appellees were committing harmful acts with regard to the children in their care. Thus, whenever Ms. Wolfe was present in her mother's home and heard loud arguments, she would activate a tape recorder she had placed in her mother's house and record the Appellees' voices. At no time did Ms. Wolfe testify that she heard these arguments while standing outside of the Appellees' home nor did the Commonwealth present

1. Although, we have jurisdiction of the constitutional issue as a matter of right, see 42 Pa.C.S. § 722(6), the second issue raises no constitutional pronouncement by the trial court mandating our automatic review. However, in light of judicial economy, because we did not previously remand this issue to the suppression court for disposition, we dispose of it in this opinion.

evidence from any other witnesses standing outside of the Appellees' home who heard Appellees' arguments.

Initially, the suppression court refused to suppress these tapes. However, upon reconsideration and after Superior Court handed down its decision in *Commonwealth v. Henlen*, 368 Pa.Super. 1, 533 A.2d 457 (1987), the suppression court reversed itself and ordered the tapes suppressed. The basis of the suppression holding was the fact that the Commonwealth had not demonstrated that the Appellees' expectation that their communications would not be recorded was itself objectively unreasonable. *See* Suppression court opinion of May 2, 1988, page 3. The Court held that since the communication was protected by the Wiretapping and Electronic Surveillance Control Act, the Act of October 4, 1978, P.L. 831, No. 164 Section 2, 18 Pa.C.S. § 5701 et seq., its use at trial would be improper. Therefore, the suppression court granted Appellees' motions for suppression of the tape recordings.

Section 5721 of the Act sets forth the exclusive remedy for the unlawful interception of wire, electronic or oral communications.[2] Under subsection (a), any aggrieved party may move to suppress the contents of any intercepted wire, electronic or oral communication if that communication was *unlawfully* intercepted. *Commonwealth v. DeBlase*, 357 Pa.Super. 71, 515 A.2d 564 (1986), alloc. den. 516 Pa. 639, 533 A.2d 711 (1987), *appeal dismissed*, 517 Pa. 323, 536 A.2d 339 (1988). Consequently, if Ms. Wolfe's taping of the Appellees' conversations was unlawful, then Section 5721 of the Act mandates that the tape recordings of those conversations be suppressed. Our analysis then must begin with a determination of whether the Appellees' conversations were *unlawfully* intercepted.

Under § 5703 of the Act, a person is guilty of a felony of the third degree if he "intentionally intercepts ... any wire, electronic or oral communication." Intercept is defined under the Act as an "aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any

---

**2.** Although the Act provides for civil and criminal penalties for violations of the Act, *See* 18 Pa.C.S. Section 5725 and 5703, Section 5721 provides a statutorily created exclusionary rule.

electronic, mechanical or other device". 18 Pa.C.S. § 5702. Finally, "oral communication" is defined under the Act as:

Any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation. The term does not include any electronic communication.

18 Pa.C.S. § 5702.

Most recently, in *Commonwealth v. Henlen,* 522 Pa. 514, 564 A.2d 905 (1989), we addressed the proper application of the Act. In *Henlen,* a prison guard was being interrogated by a Pennsylvania State Trooper following the theft of an inmate's personal property. During the interrogation, the guard was secretly tape recording the interrogation. Subsequent to the interrogation, the guard filed a complaint against the trooper who had interrogated him for harassment and gave a copy of the tape to the Internal Affairs Division of the Pennsylvania State Police. The guard was then charged for violating the Act which prohibits the interception of oral communications.

We unanimously held that the Commonwealth failed to prove that the trooper possessed a justifiable expectation that his words would not be subject to interception. Under the facts of that appeal, the evidence established that the trooper took some notes of the meeting but would have taken more if he heard more information which could have been used against the defendant. Furthermore, it was acknowledged as common practice that these kinds of interrogations are routinely recorded by law enforcement officials. Therefore, the trooper was not justified, under the circumstances, in expecting that his conversations would not be subject to interception.

In the case before us, the conversations in the Louden home were loud enough to be heard through the wall of their home into the Kulovich's home. The Kulovichs and their invitees, including their daughter, Ms. Wolfe, could hear adults in the Louden home using obscene language, arguing over explicit sexual issues, directing obscenities at particular children,

threatening the children under their care, and smacking them followed by the children crying and screaming.

The question becomes whether, under these circumstances, the Loudens had a justifiable expectation that their secret conversations, audible next door, were not subject to being intercepted. We think not. As we noted in *Commonwealth v. Henlen,* 522 Pa. 514, 564 A.2d 905 (1989), the broad principles of *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988), *cert. granted in part, Blystone v. Pennsylvania,* 489 U.S. 1096, 109 S.Ct. 1567, 103 L.Ed.2d 934 (1989), are applicable in determining whether circumstances support a conversant's expectation that his or her conversation would not be intercepted. *Blystone* makes it clear that "[w]hat one chooses to do with another's secrets may differ from the expectation of the teller, but it is no longer his secret. How, when and to whom the confidant discloses the confidence is his choosing. He may whisper it, write it, or in modern times immediately broadcast it as he hears it." *Blystone,* 519 Pa. at 462, 549 A.2d at 87, 88.

Applying these principles to the circumstances before us, we are satisfied that once the conversation, threats and arguments between the Loudens and the screams of the children became audible to the Kulovichs, through a dividing wall in their home, the Loudens lost whatever expectation of privacy they had that their secret discussions and conversations would not be overheard, intercepted and memorialized for posterity on tape or whatever device the listeners chose to broadcast the Loudens' secret conversations.

Accordingly, since these conversations were not "oral communications" protected under the Act, the trial court erred in suppressing the tape recordings made by Ms. Wolfe and to that extent, its order is reversed.

The order of the Court of Common Pleas of Lebanon County granting the Appellees a new trial, however, is affirmed.

LARSEN and McDERMOTT, JJ., did not participate in the decision of this case.

ZAPPALA and CAPPY, JJ., join Part A of this opinion.

NIX, C.J., and FLAHERTY, J., join Part B of this opinion.

FLAHERTY, J., files a concurring and dissenting opinion in which NIX, C.J., joins.

ZAPPALA, J., files a concurring and dissenting opinion in which CAPPY, J., joins.

FLAHERTY, Justice, concurring and dissenting.

I dissent from Part A of the opinion of the court which holds that 42 Pa.C.S. §§ 5984(a) and 5985(a) are unconstitutional under Article I, section 9 of the Pennsylvania Constitution, for the reasons set forth in the dissenting opinion of Mr. Chief Justice Nix, which I joined, and in my dissenting opinion, joined by the chief justice, in *Commonwealth v. Ludwig,* 527 Pa. 472, 481–92, 594 A.2d 281, 285–90 (1991). Furthermore, I believe it is improper to review the constitutionality of a statute which was not implicated in the case, viz. 42 Pa.C.S. § 5985(a), inasmuch as no live closed-circuit testimony was presented at trial. Although the logic seems to apply equally to both statutory provisions, it is unnecessary and improper to address the latter statute, and I believe any statement about it is dictum.

I concur with, and join, Part B of the majority opinion which reverses the trial court's suppression of the tape-recordings made by Ms. Wolfe. I think the Loudens could have no reasonable expectation that their unreasonably loud conversations and obscene language, clearly audible in their neighbors' home, would be protected from such interception.

NIX, C.J., joins this concurring and dissenting opinion.

ZAPPALA, Justice, concurring and dissenting.

I join the Majority Opinion with respect to the issue of the constitutionality of 42 Pa.C.S.A. §§ 5984 and 5985(a) but must dissent to the disposition of the suppression issue.

To support its determination that the trial court erred in suppressing the tape recordings made by Ms. Wolfe, the majority concludes that the Loudens lost "whatever expectation of privacy they had that their secret discussion and conversation would not be overheard," maj. op. p. 959, when the volume of those conversations became audible through a party wall which they shared with the Kulovichs. Not only does the majority's determination depend on the thickness and acoustical soundness of a party wall but more importantly infringes upon an individual's right to privacy in one's own home.

Implicit in any discussion of an expectation that a communication will not be recorded, is a discussion of the right to privacy. In *Commonwealth v. Henlen,* 522 Pa. 514, 564 A.2d 905 (1989), we relied upon our decision in *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988) cert. granted in part *Blystone v. Pennsylvania,* 489 U.S. 1096, 109 S.Ct. 1567, 103 L.Ed.2d 934 (1989) in determining what facts lead to a conclusion that no reasonable expectation of privacy exists in a particular situation. With respect to the right to privacy under Article I, Section 8 of the Pennsylvania Constitution, we stated in *Blystone:*

> To determine whether one's activities fall within the right of privacy, we must examine: first, whether Appellant has exhibited an expectation of privacy: and second, whether that expectation is one that society is prepared to recognize as reasonable. (Citations omitted.)

519 Pa. at 463, 549 A.2d at 87.

Unlike *Henlen,* the instant case involves conversations taking place in the sanctity of one's home. If nowhere else, an individual must feel secure in his ability to hold a private conversation within the four walls of his home. For the right to privacy to mean anything, it must guarantee privacy to an individual in his own home. As then Justice Roberts stated in *Commonwealth v. Shaw,* 476 Pa. 543, 550, 383 A.2d 496, 499 (1978):

Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society. (Citations omitted).

In *Shaw*, the defendant was engaged in his own affairs on the second floor of his family's home. The police were admitted to his family's home to inquire of his knowledge of a recent robbery and killing. An eyewitness to the shooting had informed the police that one of the perpetrators was a friend of a man by the name of "Shaw." When the police entered the house and called out to the defendant, a detective heard feet shuffling on the second floor. Because the defendant did not respond to the detective's call, three police officers ran upstairs without a warrant or permission. We held in that instance that the governmental intrusion was unreasonable given the defendant's legitimate expectation of privacy in his own home and therefore the intrusion violated the defendant's right against unreasonable searches and seizures. While the facts of *Shaw* differ from the appeal now before us, the principle involved is identical. An individual has a constitutionally protected right to be secure in his home.

Clearly then, our case law recognizes that an individual can reasonably expect that his right to privacy will not be violated in his home through the use of any electronic surveillance.

In this instance, appellees had no reason to believe that their neighbor was secretly and electronically taping their conversation. Unlike the officer in *Henlen* who had no reasonable expectation that his conversation would not be recorded, appellees had no reason to expect their conversation to be recorded by Wolfe.

Based upon this record, I would conclude the appellees had a legitimate expectation that their conversations would not be subject to electronic surveillance. Therefore, the suppression court properly refused to permit the Commonwealth to introduce any tapes recorded by Ms. Wolfe. Such a ruling, however, would not preclude Ms. Wolfe from testifying about the conversations and sounds emulating from appellees' residence.

CAPPY, J., joins in this concurring and dissenting opinion.