## Commonwealth v. Wright

*William I. Gabig, assistant district attorney,* for the Commonwealth.

*William Braught,* for defendant.

BAYLEY, *J.,* July 12, 1994—Defendant, Charles Louis Wright, Jr., is charged with counts of theft by extortion[1] and criminal conspiracy.[2] The Commonwealth alleges that in conspiracy with another person, defendant extorted almost $3,000 from the operator of the Lincoln Hotel in Carlisle by threatening to accuse that victim of a criminal offense. The extortion is alleged to have occurred in a downstairs hallway of the Lincoln Hotel on November 9, 1993, at which time defendant and the victim were video and audio recorded. Defendant seeks to suppress from admission into evidence at trial the audio portion of the surveillance tape. We find the following facts.

The Lincoln Hotel is a small facility in Carlisle owned by Wilma Thomas which she co-manages with her husband Eugene Thomas. In addition to having daily guests, rooms are rented for longer periods. Some people live in the hotel. The front door is kept locked and the tenants are provided keys. The hallways and other common areas are available to renters and their visitors who are admitted by key or by the Thomases. On November 9, 1993, defendant walked in the front door of the hotel and allegedly extorted Wilma Thomas in a hallway extending from that entrance. A video-audio

---

1. 18 Pa.C.S. §3923(a)(2).
2. 18 Pa.C.S. §903.

surveillance camera was mounted on the wall in front of persons coming through the front door and walking into the hallway.[3] Inside the front door to the left was a sign posted on the bulletin board. That sign set forth generally that the hotel had camera surveillance—both video and audio. The Thomases do not remember the exact language on the sign because in December 1993 a child pulled it down and it was destroyed. Signs with different words have since been placed at other locations in the hotel. On November 9, 1993 defendant never took note of the surveillance camera in the hall nor did he see the sign on the bulletin board.

Defendant maintains that the audio portion of the videotape must be suppressed under the provisions of the Wiretapping and Electronic Surveillance Control Act. 18 Pa.C.S. §5701 et seq. The Act applies exclusively to oral communications. 18 Pa.C.S. §§5701, 5703. Defendant argues that his verbal communication with Wilma Thomas was unlawfully intercepted under section 5721(a)(1) of the Act. Unless the communication falls within exceptions set forth in the Act, it would be unlawful to intercept it by any electronic, mechanical or other device. 18 Pa.C.S. §§5703(1), 5702. An oral communication is defined in section 5702 as, "Any oral communications uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such exception."

In *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988), the Supreme Court of Pennsylvania set forth

3. There were two other video-audio surveillance cameras in the hotel. One was mounted at the top of the stairs to the second floor landing and the other at the top of the stairs to the third floor landing.

the following test for determining what constitutes a justifiable expectation of privacy in communication:

"To determine whether one's activities fall within the right of privacy, we must examine: first, whether appellant has exhibited an expectation of privacy; and second, whether that expectation is one that society is prepared to recognize as reasonable." [4] *Id.* at 463-64, 549 A.2d at 87.

Defendant maintains that he had a justifiable expectation of privacy such that the recording of his conversation with the alleged victim of his criminal conduct violated the Wiretapping and Electronic Surveillance Control Act. The Commonwealth maintains that notice of audio surveillance was provided to persons entering the common hallway of the Lincoln Hotel; therefore, defendant could not have had a reasonable expectation of privacy of his conversations in that hallway. Assuming that defendant was in a position to see the surveillance camera in the hall, we are still satisfied that he was not on notice that he was being audio recorded. Furthermore, to think the average person walking into a hotel would read a notice on a bulletin board is ridiculous. Without reaching a decision of whether the interception in this case would have been impliedly consented to if there was "adequate notice" to insure that defendant would have been aware that he was being *audio* recorded, we are satisfied that defendant was not reasonably put on notice that his conversation in the hallway of the hotel was being audio recorded.

The Commonwealth further maintains that any expectation of privacy defendant may have had involving

4. See *Commonwealth v. Henlen,* 522 Pa. 514, 564 A.2d 905 (1989); *Commonwealth v. Christopher,* 423 Pa. Super. 51, 620 A.2d 494 (1992).

his conversation during which he allegedly extorted the victim is not an expectation that society is prepared to recognize as reasonable. *Commonwealth v. Blystone, supra.* Interestingly, if the alleged victim had realized ahead of time that defendant was going to attempt to extort her, she could have reported that to the police who in turn could have secured from the district attorney approval for a one party consensual interception under section 5704(2) of the Act. That, however, did not occur and contrary to the argument of the Commonwealth, the legislature has specifically recognized an expectation of privacy for private conversations between individuals by creating the statutory exclusionary rule in section 5721 of the Wiretapping and Electronic Surveillance Control Act. *Commonwealth v. Louden,* 536 Pa. 180, 638 A.2d 953 (1994). As set forth in *Commonwealth v. De Marco,* 396 Pa. Super. 357, 372-73, 578 A.2d 942, 949 (1990):

"Though the price of privacy thus purchased is often steep [Footnote 1. That the price of such privacy may be quite high is illustrated in the following scenario. A young woman agrees to go on a date with a young man. The young man forcibly rapes the young woman, confident that she will either not report the rape or that if reported his false claim of consent will raise the required reasonable doubt. The next day, he calls his victim and makes incriminating remarks over the phone. Under the current statute, if the victim had the means and the presence of mind to tape the remarks, the tape of the rapist's inculpatory remarks would be suppressed *and she could be charged with a third degree felony.*] it is readily apparent that our legislature weighed society's interests in the personal privacy of individuals against society's interests in having all relevant evidence thus obtained presented in administrative, civil, and

criminal proceedings, and found that the balance favored the personal privacy interests of individuals. The wisdom of the balance struck regarding the *statutory* exclusionary rule is, of course, a question for legislators and voters, rather than judges." (emphasis in original)

If no exception under section 5704 of the Act applies, then, "[u]nless all parties have given their consent to the interception of their ... conversations by a private individual, the evidence elicited through the illegal interception is inadmissible in any legal proceeding and must be suppressed." *Commonwealth v. Parrella,* 416 Pa. Super. 131, 143, 610 A.2d 1006, 1012 (1992).[5] No exception applies in this case. Notwithstanding, the Commonwealth still maintains, noting that defendant testified that a person walked by him and the alleged victim while they were talking in a common hallway, that defendant lost whatever expectation of privacy he may have had that his conversation would not be overheard and intercepted. In *Commonwealth v. Louden, supra,* the trial court suppressed a recording made by defendant's neighbor of threats and abuse directed at children that the neighbor could overhear in an adjoining apartment. Citing *Commonwealth v. Blystone, supra,* the Supreme Court of Pennsylvania framed the question as, "[w]hether, under these circumstances, the Loudens had a justifiable expectation that their secret conversations, audible next door, were not subject to being intercepted." *Louden, supra* at 192, 638 A.2d at 959. Reversing the trial court in *Louden,* the Supreme Court was:

---

5. This statement by the Superior Court in 1990 makes it impossible for us to follow the contrary holding of this court in *Commonwealth v. Payne,* 27 Cumberland L.J. 61 (1976).

"[s]atisfied that once the conversation, threats and arguments between the Loudens and the screams of the children became audible to the Kulovichs, through a dividing wall in their home, the Loudens lost whatever expectation of privacy they had that their secret discussions and conversations would not be overheard, intercepted and memorialized for posterity on tape or whatever device the listeners chose to broadcast the Loudens' secret conversations." *Id.*

The circumstances are completely different in the case sub judice. There is no evidence that the person who walked through the hallway while defendant was talking to the alleged victim overheard or could have overheard any part of the conversation defendant was having with the alleged victim. Accordingly, unlike *Louden,* we are satisfied that defendant did not lose the expectation he had that his conversation with the alleged victim would not be overheard and intercepted. It was not the person who walked through the hallway that overheard and intercepted the conversation defendant had with the alleged victim; it was the surveillance equipment in the hotel that accomplished that.[6]

Finally, the Commonwealth maintains that if the audio portion of the conversation between defendant and the

---

6. We are constrained to note that it is hard to conclude that a person who is committing a crime has a *reasonable* expectation pursuant to section 5702 of the Wiretapping and Electronic Surveillance Control Act that his communications in furtherance of that crime are "not subject to interception under circumstances justifying such exceptions." The legislature obviously sought to protect private communications from interception. Given the wording of section 5702 we believe it is just as obvious that the legislature did not seek to protect communications in furtherance of the commission of a crime. That reasoning, however, has not been accepted by our appellate courts.

alleged victim is suppressed, the order should not apply for impeachment purposes if defendant offers evidence contrary to that which is audio recorded on the tape. Section 5721(b) of the Wiretapping and Electronic Surveillance Control Act provides that if a suppression motion is granted:

"[t]he entire contents of all intercepted wire, electronic or oral communications obtained during or after interception which is determined to be in violation of this chapter under sub-section (a) or evidence derived therefrom, shall not be received in evidence in the trial, hearing or other adversary proceeding."[7]

In *Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d 62 (1975), the Supreme Court of Pennsylvania, applying Article 1, Section 9 of the Pennsylvania Constitution, stated:

"We are of the opinion that any statement of a defendant declared inadmissible for any reason by a suppression court cannot be used for the purpose of impeaching the credibility of a defendant who elects to testify on his own behalf at trial. This result is premised upon the logic espoused in the concurring opinion in *Commonwealth v. Woods,* 455 Pa. 1, 7, 312 A.2d 357, 360 (1973) wherein Mr. Justice Roberts, joined by the writer of this opinion and Mr. Justice Nix, stated:

"Harris-type use of constitutionally infirm confessions forces upon an accused a grisly Hobson's choice. Either an accused must forgo his right to testify, or he must risk the sure and devastating prejudice oc-

---

7. Section 5721(d) provides, "The remedies and sanctions described in this subchapter with respect to the interception of wire, electronic or oral communications are the only judicial remedies and sanctions for non-constitutional violations of this subchapter involving such communications."

casioned by the prosecution's use of the impermissibly obtained confession at the critical rebuttal stage." [8] *Id.* at 248-49, 341 A.2d at 64.

*Triplett* involved statements defendant made to the police that were suppressed because of a *Miranda* violation. Subsequent to the decision in *Triplett,* Article 1, Section 9 of the Constitution of Pennsylvania was amended to provide:

"The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself."

As noted by the Superior Court in *Commonwealth v. Baxter,* 367 Pa. Super. 342, 344, 532 A.2d 1177, 1178 (1987), "This amendment limited the application of the *Triplett* decision." See also *Commonwealth v. Simms,* 43 Cumberland L.J. 228 (1994). The amendment, however, is not applicable to the facts in the case sub judice because it only applies to a suppressed voluntary admission or voluntary confession, not a surveillance recording.

The *holding* of the Supreme Court of Pennsylvania in *Triplett* was supported by only three of the six justices who heard the case;[9] therefore, because there was no

---

8. "Harris-type use" refers to *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In *Harris,* the Supreme Court of the United States held that statements obtained without all warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are still constitutionally usable on cross-examination for the limited purpose of impeaching the credibility of a defendant who testifies at trial.

9. Justice Pomeroy, noting that the decision of the court did not require rejecting *Harris v. New York,* only concurred "[i]n the order of the court." *Triplett, supra* at 249, 341 A.2d at 64.

majority in support with the *holding,* it is "non-decisional." *Mt. Lebanon v. County Board of Elections,* 470 Pa. 317, 368 A.2d 648 (1977). Furthermore, *Triplett* involved a constitutional violation by police. Therefore, even the plurality holding is not on point here because this was a statutory violation by a private citizen.[10]

If defendant presents evidence contrary to what was recorded in his conversation with the alleged victim, the audio tape may clearly show that he is suborning or committing perjury. With an audio tape there should be no credibility issue as there often is when the police testify to a unrecorded confession. As the United States Supreme Court stated in *Harris v. New York, supra:*

"Every criminal defendant is privileged to testify in his own defense, or refuse to do so. But that privilege cannot be construed to include the right to commit perjury.... The shield provided by [the suppression of evidence] cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." [11]

That principle is applicable here assuming the trustworthiness of the audio recording satisfies legal standards. It is hardly a Hobson's choice to use the shield of privacy provided by the Wiretapping and Electronic Surveillance Control Act as a "license to use perjury by way of a defense, free from the risk of confrontation

10. Whether the operator of the Lincoln Hotel could be prosecuted for violating section 5703 of the Wiretapping and Electronic Surveillance Control Act in light of *their* rights under Article 1, Section 1 of the Pennsylvania Constitution, is not before us. See *Commonwealth v. Parrella, supra* at 144, 610 A.2d at 1012 and *Commonwealth v. Payne, supra* at 64, 65.

11. The Supreme Court of Pennsylvania has also concluded that there is no constitutional right to commit perjury. *Commonwealth v. Jermyn,* 533 Pa. 194, 620 A.2d 1128 (1993).

with prior inconsistent utterances." *Harris v. New York, supra.* Therefore, if found trustworthy and relevant by the trial judge, the suppressed audio portion of the surveillance tape may be used for the limited purpose of impeachment.

### ORDER

And now, July 12, 1994, pursuant to the within opinion, the motion of defendant to suppress the audio portion of a tape made involving a conversation he had at the Lincoln Hotel on November 9, 1993, is granted.