**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Tarquezze HILL a/k/a Rarquezze Hill, Appellant (at 4013).**

**Commonwealth of Pennsylvania, Appellee,**

v.

**Rarquezze Hill a/k/a Tarquezze Hill, Appellant (at 4014).**

Superior Court of Pennsylvania.

Submitted Feb. 22, 1999.

Filed July 15, 1999.

John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Peter J. Garnder, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before FORD ELLIOTT, J., SCHILLER, J., and CERCONE, President Judge Emeritus.

SCHILLER, J.:

¶ 1 Appellant, Tarquezze (a/k/a Rarquezze) Hill, appeals the judgment of sen-

tence entered on September 12, 1997, in the Court of Common Pleas of Philadelphia County following two separate trials *in absentia.* Under the facts of this case, we find that the trial court properly exercised its discretion to try Appellant *in absentia* due to his absence without cause, and that such trials did not violate Appellant's right to confront his accusers under the Pennsylvania Constitution. We therefore affirm.

FACTS:

¶ 2 The charges against Appellant arose out of two drug transactions. The first occurred on June 22, 1995, and Appellant was arrested that same day (C.P.# 9507–0374).[1] He was subsequently released on bail, and signed a subpoena ordering him to appear for trial on February 19, 1997. Upon his release, Appellant was arrested for another drug transaction that occurred on August 30, 1995 (C.P.# 9607–1187).[2] Although the record is unclear as to Appellant's entire pre-trial detention status following the second offense, it is certain that, on January 6, 1997, Appellant was released on bail with the condition that he cooperate with the electronic monitoring/house arrest program of the pretrial services division. On January 17, 1997, Appellant signed another subpoena ordering him to appear for trial on February 19, 1997.

¶ 3 Despite signing two subpoenas, Appellant failed to appear on February 19, 1997. The court granted two continuances while the Commonwealth made several attempts to locate Appellant. On the second relisted trial date, February 26, 1997, trial commenced on Appellant's second case (C.P.# 9607–1187) in his absence. Following a two-day jury trial, Appellant was convicted of Possession with Intent to Deliver a Controlled Substance[3] and Possession of a Controlled Substance[4] on February 27, 1997. On that same date, trial commenced on Appellant's first case (C.P.# 9507–0374) before a different jury, again in his absence. Upon the completion of the Commonwealth's case, court adjourned until March 3, 1997. On that date, counsel for both parties presented closing arguments, and Appellant was convicted of Possession with Intent to Deliver a Controlled Substance and Possession of a Controlled Substance.[5] Sentencing on both cases was deferred until April 17, 1997.

1. The trial court aptly summarized the facts of the first incident (C.P.# 9507–0374) as follows:

   Police were conducting a narcotics surveillance on June 22, 1995 around 52 nd and Market Streets, Philadelphia, when [Appellant] was observed selling crack/cocaine to an unknown black male. From a distance of just six (6) feet, police observed [Appellant], after having a brief conversation with the male, reach into his right sock and retrieve a plastic baggie containing orange tinted packets. [Appellant] handed the male one of these packets in exchange for U.S. currency. When arrested minutes later, a total of 24 packets of crack/cocaine were confiscated from [Appellant's] person.
   Trial Court Opinion, filed July 28, 1998, at 1–2.

2. The facts of the second incident (C.P.# 9607–1187) were as follows:

   On August 30, 1995, Officer Mary Williamson was on her way to work when she observed Robert McQuirns purchase crack/cocaine from [Appellant] on the corner of 52 nd and Market Streets in Philadelphia. When McQuirns was stopped moments later, police recovered a clear plastic peach tinted packet of crack/cocaine from his person. Police placed the buyer under arrest and then returned to 52 nd and Market where they arrested [Appellant]. A search of [Appellant's] person uncovered a plastic baggie containing three peach tinted packets of crack/cocaine in his waistband and $108.00 in U.S. currency.
   Trial Court Opinion, filed July 28, 1998, at 1–2.

3. 35 P.S. § 780–113(a)(30).

4. 35 P.S. § 780–113(a)(16).

5. At Appellant's first trial (C.P.# 9607–1187), Appellant was represented by Assistant Defenders Gregg M. Blender and Catlin Fenhagen. At his second trial (C.P.# 9507–0374), Appellant was again represented by Assistant Defender Blender.

¶ 4 Appellant failed to appear on April 17, 1997, and sentencing was deferred until July 10, 1997. On July 10, 1997, Appellant again failed to appear, and the court continued the proceeding to September 12, 1997. On September 12, 1997, Appellant was sentenced *in absentia* on both cases to consecutive terms of not less than two (2) nor more than ten (10) years' imprisonment. Appellant was eventually apprehended and committed to prison on October 6, 1997.[6] This timely appeal followed.

DISCUSSION:

¶ 5 Appellant raises the following issue for our review:

> Did not the trial court err in finding waiver of the right to be present, and abuse its discretion by trying appellant in absentia, where appellant was not present at the commencement of trial and where the Commonwealth would not have been prejudiced by a continuance?

Appellant's Brief, at 3. Specifically, Appellant claims that the trial court abused its discretion by trying him *in absentia,* and that the trials *in absentia* violated his right to confront the witnesses against him, as provided by Article I, Section 9 of the Pennsylvania Constitution.[7]

¶ 6 We will first address the claim, which was explicitly raised in Appellant's statement of questions presented, that the trial court abused its discretion by trying him *in absentia* pursuant to Pennsylvania Rule of Criminal Procedure 1117(a). Under the Sixth Amendment to the United States Constitution[8] and Article I, Section 9 of the Pennsylvania Constitution,[9] an accused has the right to be present in court at every stage of a criminal trial. *Commonwealth v. Bond,* 693 A.2d 220 (Pa.Super.1997). However, this right may be waived in non-capital cases either expressly or implicitly by a defendant's actions. *Commonwealth v. Sullens,* 533 Pa. 99, 619 A.2d 1349 (1992). This waiver principle is embodied in Pennsylvania Rule of Criminal Procedure 1117(a), which provides:

> (a) The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided

---

6. We note that between February 19, 1997 and October 6, 1997, a total of five bench warrants were issued on each case.

7. Although this constitutional claim was not specifically asserted in the statement of questions presented, it was properly preserved in the court below and is sufficiently addressed in the argument section of Appellant's brief, as required by *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991). As such, we will address Appellant's state constitutional claim. *See Savoy v. Savoy,* 433 Pa.Super. 549, 641 A.2d 596 (1994) (where failure to provide separate statement of questions did not impede Superior Court's ability of review where issues were raised in argument section of brief). Additionally, as Appellant does not raise any claim as to the sentencing proceeding, our review is limited to the trial proceedings.

8. The Sixth Amendment of the United States Constitution guarantees, *inter alia,* the right of an accused "to be confronted with the witnesses against him". U.S. Const. amend. VI.

9. At the time of Appellant's trial, Article I, Section 9 of our state constitution provided, in relevant part:

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusations against him, to be confronted with the witnesses against him ...

Pa. Const. Section I, Article 9. In 1995, the state constitution was amended to, among other things, substitute the phrase "be confronted with the witnesses against him" for "meet the witnesses face to face", thereby paralleling the Sixth Amendment of the United States Constitution. However, the 1995 amendments have since been invalidated by the Pennsylvania Supreme Court for a violation of Article 11, § 1 of the Pennsylvania Constitution, which establishes the procedure for the proposal of amendments by the General Assembly and their adoption by the electorate. *Bergdoll v. Kane,* 557 Pa. 72, 731 A.2d 1261, 1999 Pa. Lexis 1692 (1999).

by this rule. *The defendant's absence without cause shall not preclude proceeding with the trial including the return of the verdict.* Pa.R.Crim.P. 1117(a) (emphasis added).

¶ 7 Where the Commonwealth has demonstrated by a preponderance of the evidence that the defendant is absent "without cause" and that he knowingly and intelligently waived his right to be present, he may be tried *in absentia.* Pa. R.Crim.P. 1117(a); *Commonwealth v. Scarborough,* 491 Pa. 300, 421 A.2d 147 (1980). However, when a defendant is unaware of the charges against him, unaware of the establishment of his trial date or is absent involuntarily, he is not absent "without cause" and therefore cannot be tried *in absentia. Commonwealth v. Bond, supra* at 223 (citing *Commonwealth v. Sullens, supra* ).

¶ 8 In *United States v. Tortora,* 464 F.2d 1202 (2d Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972), the Court of Appeals for the Second Circuit set forth a list of factors the trial court must balance before exercising its discretion to proceed with trial in the defendant's absence:

> [T]he likelihood that the trial could soon take place with the defendant present; the difficulty of rescheduling, particularly in multiple-defendant trials; the burden on the Government in having to undertake two trials, . . . .

*Id.* at 1210. Our Supreme Court adopted the *Tortora* test in *Commonwealth v. Wilson,* 551 Pa. 593, 712 A.2d 735 (1998), but emphasized that the list of factors was not exhaustive.[10] Moreover, *Wilson* held that the trial court is not required to postpone the trial in order to weigh such factors. *Commonwealth v. Wilson,* 712 A.2d at 739.

¶ 9 A complete review of the record reveals that Appellant was fully aware of the charges against him and of his original trial date. In fact, he signed two subpoenas ordering his appearance on February 19, 1997. When he failed to appear on that date, the court allowed two continuances. However, Appellant also failed to appear on the relisted trial dates. Appellant was on bail at the time and, therefore, had an obligation to stand trial and submit to sentencing if found guilty. *See id.* at 738. To date, he has failed to offer any explanation for his continued absences.

¶ 10 The record also reveals that the Commonwealth was unable to locate Appellant after numerous attempts to do so. A court representative for pretrial house arrest, Vittoria Dean, testified that at the time of his release in January of 1997, Appellant was told to report to her at least twice a week and after any court date. However, Appellant failed to report. Ms. Dean made several efforts to contact Appellant at his release address and other addresses. She also had investigators from the warrant unit look for him at several locations. Approximately ten to twelve attempts were made prior to the conclusion of Appellant's second trial, between February 6, 1997 and February 28, 1997, by pretrial services. N.T., 2/28/97, at 1.99–1.102. Moreover, Detective Christopher Marano testified at Appellant's first trial that the police had searched, among other places, local area hospitals, custodial facilities, Appellant's last known address, an area around 52 nd and Market Streets that he was known to frequent, the United States Postal Service, the morgue, as well as Philadelphia probation. N.T., 2/28/97, at 2.27–2.30. Despite the diligent efforts of police and pretrial services, Appellant could not be located. Under such circumstances, the trial court did not abuse its discretion by finding Appellant absent without cause and proceeding to try him *in absentia* pursuant to Pa.R.Crim.P. 1117(a).

---

**10.** In *Commonwealth v. Wilson,* 551 Pa. 593, 712 A.2d 735 (1998), the Pennsylvania Supreme Court confined its analysis to the issue of whether proceeding with a trial *in absentia,* where the defendant fled without an explanation after trial had commenced, violated his rights under the federal constitution. *Id.* at 737 n. 6 and accompanying text.

¶ 11 However, Appellant contends that even if his absence was "without cause", it cannot be construed as an effective waiver or "an intentional relinquishment of a known right" under Article I, Section 9 of the Pennsylvania Constitution because he was absent prior to the commencement of trial and was never informed that the trial could proceed in his absence.[11]

¶ 12 Appellant first specifically argues that our state confrontation clause has been interpreted more expansively than its federal counterpart and, as such, the trial court must notify a defendant that trial may proceed in his absence in order for the defendant to effectively waive his state constitutional right. In support of this contention, Appellant relies on cases involving the use of closed circuit television testimony of an alleged child witness/victim of sexual abuse.

¶ 13 This Court has previously held that an accused may waive his right to be present at trial under Rule 1117(a) without such notification, consistent with the federal and state constitutions. *See Commonwealth v. Johnson*, 734 A.2d 864, 1999 Pa.Super. Lexis 1347 (Pa.Super. 1999) (citing *Commonwealth v. Sullens, supra* and *Commonwealth v. King*, 695 A.2d 412 (Pa.Super.1997)). Moreover, we find the cases relied upon by Appellant entirely irrelevant to the case *sub judice*, and decline to interpret the state constitution as requiring more protection for an accused with regard to trials *in absentia*.

¶ 14 *Commonwealth v. Ludwig*, 527 Pa. 472, 594 A.2d 281 (1991) and its companion case, *Commonwealth v. Lohman*, 527 Pa. 492, 594 A.2d 291 (1991), both involved allegations of child sexual abuse. Due to their fears of the defendants, the child witnesses/victims were unable to testify in the defendants' physical presence. To accommodate the witnesses, the trial courts allowed them to testify via closed circuit television, and the defendants were each found guilty of the charges against them. This Court affirmed the convictions. The Pennsylvania Supreme Court granted *allocatur* to address whether the use of closed circuit television testimony by an alleged child victim violated the confrontation clauses of the federal and state constitutions.[12] The Court held that, although the United States Constitution did allow the use of such testimony, such was not the case under the Pennsylvania Constitution. Based on the then-existing "face to face" language of the Article I, Section 9 and Pennsylvania jurisprudence, the defendants' state constitutional right to confront their accusers outweighed a child victim's subjective fears of the accused. *Ludwig, supra* 594 A.2d at 285; *Lohman, supra* 594 A.2d at 292 (quoting *Ludwig, supra* ). Therefore, the defendants were entitled to confront the child witnesses in the courtroom, and the convictions based on testimony via closed circuit television could not be sustained.

¶ 15 Three years later, in *Commonwealth v. Louden*, 536 Pa. 180, 638 A.2d 953 (1994), the Supreme Court addressed whether Sections 5984 and 5985 of the Judiciary and Judicial Procedure Act, which were enacted after *Ludwig* and *Lohman* and provided, respectively, for the use of videotape depositions and closed circuit television testimony by a child victim, violated the confrontation clause of the state constitution. The *Louden* Court looked to the intent of the framers of our state constitution:

> Many people possessed the trait of being loose-tongued or willing to say some-

---

11. Appellant does not raise a federal constitutional claim, but rather a claim based solely on Article I, Section 9 of the Pennsylvania Constitution. Thus, we will limit our analysis accordingly. We are compelled to note that the Commonwealth's brief is devoid of any state constitutional argument and is of little guidance on this issue.

12. *Commonwealth v. Ludwig*, 527 Pa. 472, 594 A.2d 281 (1991) and its companion case, *Commonwealth v. Lohman*, 527 Pa. 492, 594 A.2d 291 (1991), were decided prior to the 1995 amendments to the state constitution. *See supra* n. 9.

thing behind a person's back that they dare not or cannot truthfully say to his face or under oath in a courtroom. It was probably for this reason, as well as to give the accused the right to cross-examine his accusers and thereby enable the jury to better determine the credibility of the Commonwealth's witnesses and the strength and truth of its case, that this important added protection was given to every person accused of a crime. . . .

*Louden, supra* at 957 (quoting *Commonwealth v. Russo*, 388 Pa. 462, 470–71, 131 A.2d 83, 88 (1957)). While recognizing that certain exceptions applied to a defendant's right to confront witnesses, the Court found that such exceptions were permissible only when the accused otherwise had the opportunity to confront the witnesses "face to face". Concluding that the Act failed to limit the use of videotape in closed circuit television to those instances, the Court declared the provisions of the Act unconstitutional. *Louden, supra.*

¶ 16 While these cases are among the few dealing with the defendant's right to confront his witnesses, we find them inapplicable to the case *sub judice*.[13] In *Ludwig, Lohman* and *Louden,* the court addressed whether this right outweighed the concern for a child who is either unwilling or unable to testify in the defendant's physical presence. However, in the instant case we are asked to determine whether, by the *defendant's* own actions, he has voluntarily relinquished his right to

be present at trial and confront his accusers. We conclude that Appellant's repeated absence without cause constituted a voluntary waiver of this right, and trying him *in absentia* under these circumstances did not offend the letter or spirit of our state constitution.[14]

¶ 17 Although we certainly recognize the unambiguous right of an accused to confront his/her witnesses under the state constitution, we are also mindful of the fact that this right can be waived either implicitly or explicitly by a defendant's own actions. *See Commonwealth v. Sullens, supra.* Appellant was given a trial date, and he was issued two subpoenas requiring that he appear on February 19, 1997. The court continued the matters twice before eventually conducting the trials *in absentia.* Moreover, the Commonwealth's diligent attempts to locate Appellant were fruitless. Appellant has made no attempt to explain his absence. Thus, in this case, there is no question but that Appellant was absent "without cause".

¶ 18 Further, unlike the defendants in the child abuse cases (*Ludwig, supra, Lohman, supra,* and *Louden, supra*), Appellant had an opportunity to confront his witnesses, but instead deliberately chose to thumb his nose at the judiciary system. We will not permit a defendant to ignore subpoenas, flout the conditions of his release on bail, and then avoid the natural consequences of such deliberate actions. To the contrary, having received notice of the time and place of the trial, the onus

13. Most cases dealing with the defendant's right to confront his witnesses involve the admissibility of out-of-court statements that may fall within an exception to the hearsay rule but may not be admissible under the confrontation clause. Michael L. Bell, Recent Decision, 33 Duq. L.Rev. 361, 367 (1995). *See also* Packel & Poulin, 1 Pennsylvania Practice, § 617.2.

14. The 1995 amendments to the Pennsylvania Constitution, wherein the "face to face" language was deleted to parallel the federal constitution, *see supra* nn. 8–9, were a response to the Pennsylvania Supreme Court's decisions in *Commonwealth v. Ludwig, supra,*

*Commonwealth v. Lohman, supra,* and *Commonwealth v. Louden*, 536 Pa. 180, 638 A.2d 953 (1994). *See* Packel & Poulin, 1 Pennsylvania Practice, § 617. Those amendments, which were enacted prior to the subject proceedings, suggested that the right to confront witnesses under the state constitution is the same as that afforded by its federal counterpart. However, despite the fact that these amendments were recently invalidated, *see supra* n. 9, this Court finds no violation of the state constitution under either the 1995 amendments or the pre-existing "face to face" language of Article I, Section 9 of the Pennsylvania Constitution.

was on Appellant to ascertain the consequences of his absence, failing which he will not be heard to complain. Considering the totality of the circumstances, we find that Appellant's repeated absences without cause constituted a knowing and intelligent waiver of his right to be present for trial, consistent with the requirements of the state constitution.[15]

¶ 19 Finally, we are unconvinced by Appellant's argument that more protection should be afforded to an accused who fails to appear *prior* to the commencement of trial than is granted to one who absconds *after* trial has begun. In *Commonwealth v. Sullens, supra,* the Pennsylvania Supreme Court interpreted Pa.R.Crim.P. 1117(a) and expressly rejected the distinction between a defendant who fails to appear at the commencement of trial and a defendant who absconds during the trial. Thereafter, in *Commonwealth v. King, supra,* this Court held that the defendant could be tried *in absentia* when he was absent without cause at the time his trial was scheduled to begin. We are bound by these rulings, and find their reasoning persuasive. As pronounced in *Sullens* :

> A contrary rule ... would be a travesty of justice. It would allow an accused at large upon bail to immobilize the commencement of a criminal trial and frustrate an already overtaxed judicial system until the trial date meets, if ever, with his pleasure and convenience. It would permit a defendant to play cat and mouse with the prosecution to delay the trial in an effort to discourage the appearance of prosecution witnesses....
> A defendant has a right to his day in court, *but he does not have the right unilaterally to select the day and the hour.*

*Commonwealth v. Sullens, supra* at 104–05, 619 A.2d at 1352 (emphasis added).

 ¶ 20 In sum, we reaffirm today this Court's admonition that, while the United States and Pennsylvania Constitutions grant an accused the right to be present at all stages of a criminal trial, this right must "be tempered by the public's interest in the swift pursuit of justice." *Commonwealth v. King, supra.* As such, the right may be waived under the Pennsylvania Constitution when, as here, the accused is repeatedly absent from trial without cause, notwithstanding numerous attempts by the Commonwealth to ascertain his or her whereabouts.

¶ 21 We cannot countenance the abuse of the criminal justice system by individuals who, rather than face the criminal charges brought against them, continue to prey upon society by conducting their illegal enterprises and skirting prosecution, all at considerable public expense. To allow such criminals to remain in business because they choose to avoid trial, while law enforcement makes diligent efforts to locate them, defies common sense and jeopardizes our community.

## CONCLUSION:

¶ 22 Based on the aforementioned, we conclude that the trial court did not abuse its discretion in these cases by conducting the trials *in absentia.* We further conclude that Appellant effectively waived his right to confront his witnesses consistent with Article I, Section 9 of the Pennsylvania Constitution.

¶ 23 Accordingly, the judgment of sentence entered on September 12, 1997, in the Court of Common Pleas of Philadelphia County is affirmed.

---

**15.** In so ruling, we acknowledge *Commonwealth v. Vega,* 553 Pa. 255, 719 A.2d 227 (1998), in which the Pennsylvania Supreme Court recently held that a minimum pre-trial colloquy must be conducted in order for the accused to expressly waive his right to be present at trial. However, *Vega* strictly dealt with the right of a defendant who is present in court to expressly waive his right to remain for the proceedings, rather than a defendant's implied waiver of his right to be present by failing to appear. Thus, *Vega* is distinguishable from the case *sub judice.*