**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALBERT DUNKOWSKI | : | |
| | : | |
| Appellant | : | No. 1047 EDA 2022 |

Appeal from the Judgment of Sentence Entered February 7, 2022
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0000225-2020

BEFORE: PANELLA, P.J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY PANELLA, P.J.:                **FILED AUGUST 10, 2023**

Albert Dunkowski brings this appeal from the judgment of sentence imposed following his conviction of three counts of endangering the welfare of children, based on the neglect suffered by three of his children. We affirm.

In August 2019, police discovered Dunkowski and his wife inhabiting an automobile that was parked in the lot of the Woodbourn Train Station in Middletown Township. Upon arriving at the scene, officers observed Dunkowski lying face down in the grass. His wife was slumped over in the front passenger seat. Four children occupied the rear seat area of the vehicle. A cat was also living in the car. Officers noted that the vehicle was cluttered with trash, clothing, food, and debris. They also noticed the strong odor of

---

* Former Justice specially assigned to the Superior Court.

bodily excretions, cigarettes, and rotting food. Due to the visibly poor physical condition of the children, the officers called Emergency Medical Services ("EMS"). EMS took protective custody of the children and transported them to the hospital.

The trial court offered the following review of the condition of the various children that were in the parental care of Dunkowski and his wife:

> At [the hospital], treating physicians made the following assessments: N.D., who suffered from cerebral palsy, was thirteen years old and weighed about ninety pounds. She was nonverbal, had a feeding tube, and started to develop bedsores from remaining in the same position for a significant amount of time. J.D. was four years old and weighed about forty pounds. She was still in diapers as she was not yet trained to go to the bathroom on her own and she needed extensive dental work - a root canal, a crown, and three fillings. Female L.D. was five years old and weighed about forty-eight pounds. She was also still in diapers and needed nine root canals, nine crowns, one filling, and four teeth pulled. She had never been to school. Male L.D. was nine years old and weighed about sixty pounds. He had bilateral clubfeet … as well as undescended testicles … . Both required procedures—several to improve Male L.D.'s clubfeet and one to surgically descend his testicles. Male L.D. also had such a severe, significant amount of dried, caked-on fecal matter on his diaper that when the doctor pulled it back, Male L.D.'s skin became raw and red. Dr. Torradas, the physician who treated the children, testified that, over the course of his lengthy career, he had never seen anything like what he saw on August 27, 2019.

> That same day, [Dunkowski] and [his wife] spoke with Detective Brian Hyams (hereinafter "Detective Hyams") and told him that none of the four children found were enrolled in school. Detective Hyams asked if they had any additional children and they provided the names of three more minors in their care. They relayed that one child, R.[D]., was staying with a friend at the time, but neither [Dunkowski] nor [his wife] could provide any contact information to get in touch with her. Authorities eventually found R.[D]. and discovered that she missed almost the entire 2018-2019 school year and had an abscess in her tooth that

rendered her unable to chew and required significant dental surgery. Fortunately, R.D did not require immediate, emergency medical treatment.

Shortly thereafter, Detective Hyams discovered that [Dunkowski] and [his wife] had an eighth minor child—S.D.— they did not mention when previously asked. After some investigation, Detective Hyams located S.D. and [Dunkowski] agreed to "turn her over" to authorities in a McDonald's parking lot. S.D. "appeared to be very thin, small, disheveled. Her hair was very short as if it wasn't growing, or falling out. Her eyes were puffy underneath. She was very, very quiet, almost like she was lethargic." Doctors later determined she weighed about forty-two pounds. S.D. was unable to walk because her legs were bent in a seated position. She also still needed diapers – at thirteen years old – because [Dunkowski] and [his wife] never taught her how to use the bathroom. Authorities immediately took protective custody of S.D. and transported her to [the hospital] with the other children.

Trial Court Opinion, 6/23/22, at 2-4 (citations omitted).

On September 10, 2019, Dunkowski was charged with six counts of endangering the welfare of children.[1] Dunkowski's wife was also charged with the same crimes. A consolidated jury trial commenced on October 4, 2021. On the third day of trial, Dunkowski and his wife failed to appear. The trial court issued a bench warrant, held a hearing, and proceeded with the trial *in absentia*. The jury convicted Dunkowski of three counts of endangering the welfare of children and found him not guilty on the remaining three counts.[2]

---

[1] 18 Pa.C.S.A. § 4304(a)(1).

[2] The jury convicted Dunkowski of the charges relating to S.D., N.D., and Male L.D. He was acquitted of the charges pertaining to Female L.D., J.D., and R.D.

Authorities apprehended Dunkowski on November 3, 2021. On February 7, 2022, the trial court sentenced Dunkowski to serve an aggregate term of incarceration of nine to twenty-one years. Dunkowski filed a timely post-sentence motion, which the trial court denied. This timely appeal followed. Dunkowski asks us to review whether the trial court erred in allowing him to be tried *in absentia*, erred in permitting impact testimony from an EMS worker, and abused its discretion in formulating his sentence.

Dunkowski first asks us to address the issue of whether the trial court erred in continuing his trial *in absentia*. ***See*** Appellant's Brief at 12-18. Dunkowski alleges the Commonwealth failed to prove by a preponderance of the evidence that his absence from the final day of trial was without cause. ***See id***. He asserts the Commonwealth did not set forth sufficient competent evidence to meet its burden. ***See id***. We disagree.

A criminal defendant has the right to be present at all stages of criminal proceedings. ***See Commonwealth v. Wilson***, 598, 712 A.2d 735, 737 (Pa. 1998). In Pennsylvania, the rule governing a trial *in absentia* is set forth in Pennsylvania Rule of Criminal Procedure 602, which provides in relevant part as follows:

**Rule 602. Presence of the Defendant**

(A) The defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. **The defendant's absence without cause shall not preclude proceeding with the trial including the return of the verdict and the imposition of sentence.**

Pa.R.Crim.P. 602(A) (emphasis added).

Generally, a defendant who is absent without cause at the start of trial may be tried *in absentia*. **See Commonwealth v. Johnson**, 734 A.2d 864, 866-867 (Pa. Super. 1999). The rule authorizing trials *in absentia* embodies the principle that, while the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution protect the right of an accused to be present in court at every stage of a criminal trial, this right may be waived in non-capital cases either expressly or implicitly by a defendant's actions. **See Commonwealth v. Hill**, 737 A.2d 255, 258 (Pa. Super. 1999). Therefore,

> [w]here the Commonwealth has demonstrated by a preponderance of the evidence that the defendant is absent "without cause" and that he knowingly and intelligently waived his right to be present, he may be tried *in absentia*. However, when a defendant is unaware of the charges against him, unaware of the establishment of his trial date or is absent involuntarily, he is not absent "without cause" and therefore cannot be tried *in absentia*.

**Id**. at 259 (citations omitted).

Our Supreme Court has held that a review of the sufficiency of the Commonwealth's evidence is not necessary if the record, taken as a whole, establishes that the defendant had notice of trial and nonetheless "willfully decided to absent himself without cause or justification." **Commonwealth v. Sullens**, 619 A.2d 1349, 1352-1353 (Pa. 1992). In **Sullens**, the defendant

admitted during sentencing that he knew of his trial date and knowingly absconded. *Id*. at 1353.

The decision to proceed with trial rather than to grant a continuance is within the trial court's discretion. *See Johnson*, 734 A.2d at 866, 867. This Court reviews the determination of the trial court to proceed with a trial *in absentia* for an abuse of that discretion. *See Wilson*, 712 A.2d at 738. *See also Commonwealth v. Bond*, 693 A.2d 220 (Pa. Super. 1997) (finding that the trial court did not abuse its discretion when it denied the appellant's motion to suppress, conducted his trial and sentenced him *in absentia*). An abuse of discretion is not a mere error of judgment; it involves bias, partiality, prejudice, ill-will, or manifest unreasonableness. *See Commonwealth v. Busanet*, 817 A.2d 1060, 1076 (Pa. 2002).

In addressing the issue, the trial court offered the following pertinent analysis in support of its decision to proceed *in absentia*:

> When deciding to conduct trial in [Dunkowski's] absence, this [c]ourt waited over an hour for [Dunkowski] and [his wife] to appear before deciding that it was clear they had voluntarily decided to avoid trial. N.T. 10/6/2021, p. 12. During that time, this [c]ourt instructed the parties to use all available resources to locate [Dunkowski] and [his wife]. Defense Counsel repeatedly attempted to contact [Dunkowski] and could offer no possible explanation for his absence. The Prosecutor contacted all local hospitals (including one out of state) and the Bucks County Correctional Facility, and found no indication that [Dunkowski] was there. *Id*. at pp. 7-8. The radio room reported that there were no accidents involving [Dunkowski's] vehicle. *Id*. A police officer went to the location [Dunkowski] was believed to be living at (and the location [Dunkowski] listed on his Notice of Formal Arraignment), and family members indicated that, when they went to bed the previous night, [Dunkowski] and [his wife] were

- 6 -

present, but, the following morning, they were missing, and no one had heard from them since. *Id*. at pp. 8, 29. Lastly, caseworkers from Bucks County Children and Youth reported they had no contact with [Dunkowski] or [his wife] before they failed to appear. *Id*. at p. 11.

Trial Court Opinion, 6/23/22, at 9. The trial court further noted that "at sentencing, [Dunkowski] admitted that he knew of the trial date but ran to avoid punishment." *Id*.

Our review of the record reflects that it is undisputed that Dunkowski knew of the trial dates in this matter. Indeed, he was present and offered testimony in his own defense at the conclusion of the second day of trial. Moreover, at the sentencing hearing, Dunkowski explained that he did not appear for the third day of his trial because he was afraid that he was going to be sentenced to jail, got scared, and ran. *See* N.T., 2/7/22, at 13-14. Accordingly, Dunkowski admitted to knowingly absenting himself from trial when offered this testimony to the trial court.

Dunkowski has offered no evidence of record establishing that he had a legitimate reason for not attending the remainder of his trial. In addition, the record does not demonstrate that Dunkowski was unaware of the trial date, nor does it suggest that his failure to appear was involuntary. Therefore, because of Dunkowski's admission on the record that he intentionally absented himself from trial to avoid sentencing, we detect no basis upon which to disturb the decision of the trial court to proceed with a trial *in absentia*.

Second, Dunkowski argues that the trial court erred in permitting the Commonwealth to present evidence from an EMS worker concerning the worker's physical reaction to witnessing the child victims. *See* Appellant's Brief at 19-22. Dunkowski points to the following testimony permitted by the trial court:

> Q. … But as a non-Army medic, after you had completed this case, did you have any physical emotional reaction?
>
> A. Yeah. I was disgusted and nauseated, and I started crying in one of the empty rooms in the hospital.

N.T., 10/5/21, at 15. Dunkowski contends that the testimony from the EMS worker had no probative value, was unfairly prejudicial, and cumulative.

"[Q]uestions concerning the admissibility of evidence are committed to the sound discretion of the trial judge, whose rulings will not be disturbed on appeal absent an abuse of that discretion." ***Commonwealth v. Reed***, 990 A.2d 1158, 1167-68 (Pa. 2010) (citation omitted). Abuse of discretion requires a finding of misapplication of the law, a failure to apply the law, or judgment by the trial court that exhibits bias, ill-will, prejudice, partiality, or was manifestly unreasonable, as reflected by the record. ***See Commonwealth v. Montalvo***, 986 A.2d 84, 94 (Pa. 2009). The basic requisite for the admissibility of any evidence in a case is that it be competent and relevant. ***See Commonwealth v. Freidl***, 834 A.2d 638, 641 (Pa. Super. 2003).

A trial court should find evidence admissible if it is relevant, that is "if it logically tends to establish a material fact in the case, tends to make a fact at

issue more or less probable, or supports a reasonable inference or presumption regarding a material fact." ***Commonwealth v. Williams***, 896 A.2d 523, 539 (Pa. 2006) (citation omitted). Pennsylvania Rule of Evidence 402 expressly provides that "[a]ll relevant evidence is admissible, except as otherwise provided by law[,]" and "[e]vidence that is not relevant is not admissible." Pa.R.E. 402. Pennsylvania Rule of Evidence 401 defines "Relevant Evidence" as evidence having "any tendency to make a fact more or less probable than it would be without the evidence;" and "the fact is of consequence in determining the action." Pa.R.E. 401.

Likewise, Pennsylvania Rule of Evidence 403 sets forth that relevant evidence may be excluded "if its probative value is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. The comment to Pa.R.E. 403 defines "[u]nfair prejudice" as "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt. Furthermore, our Supreme Court has noted previously that "[e]vidence will not be prohibited merely because it is harmful to the defendant." ***Commonwealth v. Dillon***, 925 A.2d 131, 138–139 (Pa. 2007). "[E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case."

***Commonwealth v. Page***, 965 A.2d 1212, 1220 (Pa. Super. 2009) (citation omitted).

In addressing the admission of evidence of the EMS worker's reaction to the condition of the children, the trial court offered the following analysis:

> Here, during the opening arguments of the case, [Dunkowski's wife's] Defense Counsel argued that the condition of the children was due to homelessness and other factors beyond [Dunkowski's] and [his wife's] control. Therefore, the Prosecutor sought to introduce this evidence to show the severity of the children's conditions. He did not seek to introduce the EMT's opinion, but rather a fact about the EMT's reaction. As such, this Court found this information relevant as long as it was limited to the EMT's experience outside of the military (because the conditions of the children were distinctly different from the conditions of those he treated in a combat zone). N.T. 10/5/2021, p. 12. As this decision was clearly not an abuse of discretion, [Dunkowski's] argument that it was impermissibly admitted is meritless.

Trial Court Opinion, 6/23/22, at 11-12. Based on our review, we cannot conclude this reasoning was an abuse of discretion.

The prosecutor questioned EMS worker Lane Shore about his personal reaction to the discovery and condition of Dunkowski's children. ***See*** N.T., 10/5/21, at 10. Dunkowski's counsel objected based on relevance and prejudice. ***See id***. During a sidebar, the Commonwealth argued the evidence was relevant to address the opening argument made by the defense that the condition of the children was the result of homelessness. ***See id***. at 10-11. Moreover, the Commonwealth alleged that Shore's testimony was necessary to address the consistent attempts by the defense to minimize the condition

of the children that occurred on the first day of trial. ***See*** N.T., 10/4/21, at 45-46, 49, 50-51, 60, and 96.

Accordingly, the facts support the trial court's conclusion that testimony presented by Shore regarding his physical reaction to the condition of the children was not offered to unfairly prejudice Dunkowski or inflame the jury. Rather, this testimony was relevant to establish that the condition of the children was the result of Dunkowski's criminal behavior and not merely homelessness. Moreover, the potential for prejudice from admission of this evidence does not outweigh its probative value. Therefore, we conclude that the trial court did not abuse its discretion in admitting the evidence. Dunkowski's contrary claim lacks merit.

Dunkowski last argues that the trial court abused its discretion in fashioning a sentence that was manifestly excessive. ***See*** Appellant's Brief at 23-20. Dunkowski asserts that his sentence, which was double the aggravated range of the sentencing guidelines, was unduly harsh and did not consider his rehabilitative needs, history, and character, but relied upon the nature of the offenses.

It is well settled there is no absolute right to appeal the discretionary aspects of a sentence. ***See Commonwealth v. Hartle***, 894 A.2d 800, 805 (Pa. Super. 2006). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance

of appeal. *See Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super.

2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa.

Super. 2010):

> An appellant challenging the discretionary aspects of his sentence
> must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1)
> > whether appellant has filed a timely notice of appeal,
> > *see* Pa.R.A.P. 902 and 903; (2) whether the issue was
> > properly preserved at sentencing or in a motion to
> > reconsider and modify sentence, *see* Pa.R.Crim.P.
> > 720; (3) whether appellant's brief has a fatal defect,
> > Pa.R.A.P. 2119(f); and (4) whether there is a
> > substantial question that the sentence appealed from
> > is not appropriate under the Sentencing Code, 42
> > Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation and brackets omitted).

Here, the first three requirements of the four-part test are met.

Dunkowski brought an appropriate appeal, filed a post-sentence motion, and

included in his appellate brief the necessary concise statement of the reasons

relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). We next

determine whether he has raised a substantial question requiring us to review

the discretionary aspects of the sentence imposed.

Whether a particular issue constitutes a substantial question about the

appropriateness of sentence is a question to be evaluated on a case-by-case

basis. *See Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super.

2001). As to what constitutes a substantial question, this Court does not

accept bald assertions of sentencing errors. ***See Commonwealth v. Malovich***, 903 A.2d 1247, 1252 (Pa. Super. 2006). Rather, an appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. ***See Commonwealth v. Ferguson***, 893 A.2d 735, 737 (Pa. Super. 2006).

In his Rule 2119(f) statement, Dunkowski argues the trial court abused its discretion by relying solely on the facts of the case and failing to consider certain mitigating factors, including his family history, age and rehabilitative needs, when it imposed a manifestly excessive sentence. ***See*** Appellant's Brief at 23-24. This Court has held that an assertion that a sentence was excessive and that the trial court failed to properly consider the factors set forth in 42 Pa.C.S.A. § 9721(b)[3] raises a substantial question. ***See Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*). ***See also Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014) (stating that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question") (internal citation omitted). We therefore grant permission to appeal and proceed to review the merits of Dunkowski's sentencing claim.

---

[3] The factors to be considered under 42 Pa.C.S.A. § 9721(b) include: the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. ***See*** 42 Pa.C.S.A. § 9721(b).

In his brief, Dunkowski argues that the aggregate sentence of nine to twenty-one years "should be vacated because the court improperly focused solely on the nature of the crime when fashioning sentence." Appellant's Brief at 28. He claims that the trial court did not give any consideration to his character, history or condition, and the court failed to give any consideration to Dunkowski's rehabilitative needs. *See id*.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. ***Commonwealth v. Bankes***, 286 A.3d 1302, 1307 (Pa. Super. 2022). In this context, an abuse of discretion is not shown merely by an error in judgment. ***See id***. Rather, an appellant must establish by reference to the record that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision. ***See id***.

The sentencing judge has broad discretion in determining the proper penalty, and this Court accords the sentencing court great deference, as it is the sentencing court that is in the best position to view a defendant's character, displays of remorse, defiance, or indifference and the overall effect and nature of the crime. ***See Commonwealth v. Walls***, 926 A.2d 957, 961 (Pa. 2007) (quotations and citations omitted). As we have stated, "a court is required to consider the particular circumstances of the offense and the character of the defendant." ***Commonwealth v. Griffin***, 804 A.2d 1, 10 (Pa.

Super. 2002) (citation omitted). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id*. (citation omitted).

In addition, "[o]ur Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1133 (Pa. Super. 2009) (citing *Commonwealth v. Devers*, 546 A.2d 12 (Pa. 1988)).

Our review of the record reflects that, at Dunkowski's sentencing, the trial court received and reviewed a pre-sentence report. N.T., 2/7/22, at 3-4. Indeed, the trial judge made the following comment concerning the quality of the presentence report:

> First, let me say that the presentence report is quite thorough, comprehensive, and given the nature of the case and the complexities of the issues involved in this case, I might suggest to you it is one of the better [pre-sentence] reports I have seen in all my years on the bench. It has addressed all of the issues that each of you have so eloquently argued. And I really have to compliment the Department of Probation and Parole and for its thoroughness and comprehensive reporting.

*Id*. at 41.

Immediately prior to announcing the judgment of sentence, the trial court meticulously detailed its reasoning for imposing the sentence, which included a thorough discussion of the case and elicited a complete understanding of the relevant sentencing factors as they pertained to

- 15 -

Dunkowski. ***See id***. at 41-49. As the trial court stated in its written opinion, "after taking into account the facts of the case, [Dunkowski's] background and need for rehabilitation, and the Sentencing Guidelines, this [c]ourt found the Sentencing Guidelines to be inappropriate and a sentence of total confinement was warranted." Trial Court Opinion, 6/23/22, at 15. The court further noted that "the reasons for sentencing were clearly outlined on the record, despite [Dunkowski's] unfounded and perplexing argument to the contrary." ***Id***. Upon review of the record, we agree.

Therefore, we conclude the reasons the trial court offered for the sentence imposed were more than sufficient to conclude that the court properly considered all relevant factors in fashioning Dunkowski's sentence. Also, because the trial court had been fully informed and relied upon the presentence report, we conclude the trial court did not abuse its discretion in creating the instant sentence. ***Ventura***, 975 A.2d at 1133. Accordingly, Dunkowski's claim that the trial court failed to consider the appropriate factors in imposing the sentence lacks merit.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 8/10/2023*

- 16 -