J-A16006-18

2018 PA Super 282

| COMMONWEALTH OF PENNSYLVANIA, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellee | | |
| v. | | |
| DONDI DECOSTA, | | |
| Appellant | | No. 3317 EDA 2016 |

Appeal from the Judgment of Sentence Entered September 30, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004260-2015

BEFORE: BENDER, P.J.E., LAZARUS, J., and FORD ELLIOTT, P.J.E.

OPINION BY BENDER, P.J.E.:                **FILED OCTOBER 16, 2018**

Appellant, Dondi DeCosta, appeals from the judgment of sentence of an aggregate term of 4-10 years' incarceration, imposed following his conviction for possession of an instrument of crime and terroristic threats. Appellant claims the trial court abused its discretion by permitting the jury to convict Appellant *in absentia* while Appellant was hospitalized and intubated, which occurred during the course of the jury's deliberations. After careful review, we vacate Appellant's judgment of sentence and remand for a new trial.

A detailed recitation of the facts underlying Appellant's conviction are not necessary to our disposition of this appeal. Briefly, on October 12, 2015, Appellant threatened two strangers with a knife in front of a Pathmark Store in Northeast Philadelphia. One victim drew a firearm and warned Appellant to stop, but Appellant ignored the warning. The victim shot Appellant in the

groin as Appellant charged him with the knife. The Commonwealth charged Appellant with two counts each of aggravated assault, terroristic threats, simple assault, and recklessly endangering another person, and one count of possessing an instrument of crime.[1]

Appellant was tried by a jury between June 22nd and June 27th of 2016. The jury began its deliberations on Friday the 24th, and were set to reconvene on Monday the 27th. As deliberations were set to begin on that Monday, Appellant's counsel informed the court that Appellant had been hospitalized over the weekend with a diagnosis of Sepsis. N.T., 6/27/16, at 2. Counsel indicated that Appellant was sedated and on a mechanical ventilator and, therefore, unable to attend the trial. *Id.* Counsel provided documentation from two doctors corroborating this account. Counsel refused the court's request to waive his client's presence if there were any questions from the jury. *Id.* at 3.

The trial court decided to proceed over defense counsel's objections. Specifically, the trial court declared that no prejudice would result from Appellant's absence, and that defense counsel could address any questions raised by the jury. *Id.* at 5. Defense counsel objected to proceeding in any fashion until Appellant was able to return to the courtroom, and that the trial court should declare a mistrial if it refused to stay deliberations. *Id.* at 6-7. Defense counsel specifically requested that the court stay the jury's

---

[1] The simple assault and recklessly endangering another person charges were *nolle prossed* prior to trial.

deliberations until noon (three hours later) in order to get an update on Appellant's condition. *Id.* at 6-7. The trial court denied counsel's objections/requests. *Id.* at 7. Soon thereafter, the jury requested further instructions on the definitions of the charged crimes. *Id.* at 8. Defense counsel renewed his objection to proceeding *in absentia*. *Id.* at 9. The court denied the objection and proceeded to instruct the jury. *Id.* at 12-22.

Immediately thereafter, the jury indicated that it had reached a verdict. *Id.* at 23. When the trial court signified that it intended to receive the verdict, defense counsel renewed his objection to proceeding in Appellant's absence, "especially for a verdict." *Id.* The trial court overruled the objection, and proceeded to receive the jury's verdict in Appellant's absence. *Id.* at 25-30.

The jury found Appellant guilty of possessing an instrument of crime and one count of terroristic threats, and not guilty as to all remaining counts. On September 30, 2016, the trial court sentenced Appellant to 2-5 years' incarceration for possessing an instrument of crime, and to a consecutive term of 2-5 years' incarceration for terroristic threats, constituting an aggregate sentence of 4-10 years' incarceration.

Appellant filed a timely notice of appeal. On February 15, 2017, Appellant filed a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its opinion 291 days later, on December 4, 2017.

Appellant now presents the following questions for our review:

> 1. Did the trial court err in taking the verdict of the jury when the Appellant was not present due to medical problems?

2. Did the lower court err at sentencing by imposing a term of imprisonment that was excessive and was imposed without proper consideration of mitigating circumstances?

Appellant's Brief at 3.

Appellant's first claim concerns his constitutional and statutory rights to be present during every stage of a criminal trial.

> The right to trial by jury is guaranteed by the Sixth Amendment to the U.S. Constitution and by the Pennsylvania Constitution, Article I, Section 6 and Section 9. A defendant's right to be present at his or her trial is grounded in the Confrontation Clause of the Sixth Amendment and in the Due Process Clauses of the Fifth and Fourteenth Amendments. The United States Supreme Court has determined that "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 … (1970) (citing *Lewis v. United States*, 146 U.S. 370 … (1892)). In addition, the High Court "has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge…. Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 … (1987) (quotation marks and internal citation omitted).

*Commonwealth v. Hunsberger*, 58 A.3d 32, 37 (Pa. 2012).

Additionally, Pa.R.Crim.P. 602(A) provides that:

> The defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. The defendant's absence without cause at the time scheduled for the start of trial or during trial shall not preclude proceeding with the trial, including the return of the verdict and the imposition of sentence.

Pa.R.Crim.P. 602(A).

- 4 -

Under the constitutional standard, the right to be present at trial "is not guaranteed 'when presence would be useless, or the benefit but a shadow.' Due process only requires the defendant's presence 'to the extent that a fair and just hearing would be thwarted by his absence.'" ***Commonwealth v. Williams***, 959 A.2d 1272, 1281–82 (Pa. Super. 2008), *aff'd*, 9 A.3d 613 (Pa. 2010). As such, the constitutional rights at issue are circumscribed by a prejudice standard – a defendant must show that his absence from a trial proceeding could have undermined the fairness of the proceeding.

However, Rule 602 provides for more protection than offered by either the United States or Pennsylvania Constitutions. Rule 602 dictates that a defendant "***shall*** be present at ***every stage*** of the trial ***including*** the impaneling of the jury and ***the return of the verdict***, … except as otherwise provided by ***this rule***." Pa.R.Crim.P. 602(A) (emphasis added). The only exception provided by Rule 602 is where the defendant is "absent without cause…." ***Id.***[2] Thus, we, first consider whether the trial court abused its discretion in determining, pursuant to Rule 602(A), that Appellant was absent without cause when the verdict was issued on June 27, 2016.

In its opinion, the trial court reasoned that it did not err in receiving the verdict *in absentia* because it found that Appellant was absent without cause. Trial Court Opinion ("TCO"), 12/4/17, at 11-19. Specifically, the trial court

---

[2] However, like most rights, a defendant may affirmatively waive his presence during trial proceedings. ***See*** Pa.R.Crim.P. 602 (comment) ("Nothing in this rule is intended to preclude a defendant from affirmatively waiving the right to be present at any stage of the trial….").

determined that Appellant was absent without cause because it determined that he had deliberately attempted to commit suicide in order to avoid his trial. *Id.* at 14. The court based this finding on Appellant's family's reporting to doctors that they were concerned that his hospitalization "may actually have been a suicide attempt." *Id.* (quoting from Exhibit E of Appellant's Sentencing Motion, a note from a treating physician). "More importantly," the court reasoned, "the document test results from Aria [H]ospital reflected that Appellant had tested positive for both benzodiazepines and opiates before being admitted to the hospital." *Id.* The court admitted that its decision was influenced by Appellant's previous attempts to "employ, falsify or exaggerate his medical conditions to avoid trial an incur undue sympathy information [*sic*] from the jury…." *Id.* at 15. The trial court summarized this prior conduct as follows:

> The docketed court history of [the] instant case was replete with successful employment of [Appellant's] purported medical conditions to lower bail and delay trial. When this case was first presented before this presiding trial court[,] the effort to use his medical conditions to unduly delay trial was unsuccessfully renewed. During this effort, [Appellant] revealed himself to be quite competent and able to proceed to trial despite his protestations to the contrary.
>
> This [c]ourt similarly observed that when [Appellant] finally appeared ready for the jury trial to begin, he used his family members to manipulate and move a wheelchair in and out of the courtroom during which he feigned extreme pain and exaggerated his overall condition beginning during jury selection. At every other proceeding, however, including when he appeared before at more preliminary proceedings and after the trial before the mental health evaluators and presentence investigator[,] he walked easily with crutches.

Particularly relevant to [Appellant's] demonstrated intent to manipulate his medical condition to avoid responsibility for his violence was the report of a selected juror during jury selection. This selected juror reported to the trial court that she happened to be in an elevator occupied by [Appellant], his family and his counsel during which she overheard conversations concerning [Appellant's] use of the wheelchair. These conversations caused her to believe there was a concerted effort to falsely portray [Appellant's] medical condition to incur her sympathy. After this upset juror reported the conversation, she was duly dismissed and replaced after a recorded hearing. Even though the trial court cautioned [Appellant], however, he brazenly continued to fake pain and injury whenever the jury was in view of him during the trial.

[Appellant's] overall behavior before, during and after trial certainly colored the trial court's perception of [his] mindset and purpose [during] his absence on the last morning of deliberation June 27, 2016. Thus, [Appellant] cannot fault the trial court for believing his absence on the day he faced potential imprisonment on June 27, 2016 was without just cause.

*Id.* at 15-16.

Appellant argues that the trial court's ruling was made without sufficient proof of the allegation that he had intentionally absented himself from the jury's verdict by attempting suicide. Appellant construes the court's determination as mere speculation, given that Appellant's family had only conveyed their suspicion of a suicide attempt to doctors, and documentation provided to the court indicated that Appellant had a prescription for opiates for pain management. Appellant's Brief at 12. Appellant also complains that the trial court essentially shifted the burden of proof on this matter, as it is the Commonwealth's duty to show, by a preponderance of the evidence, that he was absent without cause.

In **Commonwealth v. Hill**, 737 A.2d 255 (Pa. Super. 1999), this Court indicated that the Commonwealth bears the burden of proving that a defendant is absent without cause. **Id.** at 259 ("Where the Commonwealth has demonstrated by a preponderance of the evidence that the defendant is absent 'without cause' and that he knowingly and intelligently waived his right to be present, he may be tried in absentia."). Instantly, we see no evidence in the record of the Commonwealth's attempting to meet this burden. Instead, the trial court appears to have rested its decision based on documentation provided to the court by Appellant. More troubling, the court suggests in its opinion that Appellant bore the burden of proving that his absence was involuntary. **See** TCO at 15 ("To date, no data has been submitted **to prove the claim** that [Appellant]'s action was involuntary.") (emphasis added).

The documentation reviewed by the court indicates that its decision was based primarily on hearsay speculation by the family that they suspected Appellant's hospitalization resulted from a suicide attempt. There is no evidence that anyone observed Appellant attempting to commit suicide. Neither Appellant's family, nor the doctor whose notes restated the family's speculation regarding suicide, testified before the trial court. Indeed, the family member or members who offered their suspicion to the attending medical professionals were never identified. Moreover, the presence of drugs in Appellant's system when he was hospitalized was not obvious or clear evidence of a suicide attempt, as the trial court appears to suggest, given that

Appellant had a prescription for opiates to manage his pain, regardless of whether he had, at times, exaggerated that pain during prior court proceedings. It is not suspicious at all that a person would still be receiving medication for pain eight months after being shot in the groin. Furthermore, there was no evidence presented to the trial court that indicated that the quantity of drugs detected in Appellant's system was beyond what would have been expected had he been taking those medications as prescribed. Finally, there is no evidence in the record that Appellant's diagnosis of Sepsis was faked, or that it could have been induced by a suicide attempt as implicitly suggested by the trial court.[3]

Also of concern here is that, rather than acting as a neutral arbiter of justice, the trial judge appears to have assumed the Commonwealth's role as an advocate with respect to defense counsel's request to stay the proceedings based on Appellant's obvious inability to attend the trial proceedings. "An abuse of discretion exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of **partiality**, prejudice, bias or ill-will." ***Commonwealth v. Ballard***, 80 A.3d 380, 397 n.18 (Pa. 2013) (emphasis

_____

[3] The implicit suggestion of the trial court is that Appellant attempted to commit suicide by drug overdose, and in so doing self-inflicted his Sepsis diagnosis. However, "Sepsis is a life-threatening condition that arises when the body's response to infection causes injury to its own tissues and organs." https://en.wikipedia.org/wiki/Sepsis. No evidence was presented to the trial court demonstrating that Sepsis can result, much less did result in this case, from a suicide attempt by drug overdose.

added) (quoting **Commonwealth v. Flor**, 998 A.2d 606, 634 (Pa. 2010)). While we understand the court's legitimate concerns regarding Appellant's prior conduct before and during trial, it was the Commonwealth's burden to demonstrate that he was absent without cause when the court decided to proceed with the return of the verdict without Appellant present. Indeed, the district attorney did not once oppose Appellant's motion to stay or motion for a mistrial, nor even weigh in at all on the court's deliberations regarding Appellant's absence.[4] **See** N.T., 6/27/16, at 2-12 (prior to the jury's question); 23-25 (prior to receiving the jury's verdict).

As such, we conclude that the trial court abused its discretion by denying defense counsel's request to stay the return of the verdict, thereby violating Appellant's statutory right to be present pursuant to Rule 602(A). The Commonwealth did not prove, by a preponderance of the evidence, that Appellant was absent without cause. At best, the court speculated that Appellant had attempted to commit suicide based on mere conjecture received through multiple layers of hearsay, despite Appellant's suffering from a life-threatening condition that easily could have been unrelated to any purported suicide attempt. Evidence of Appellant's prior misconduct could not overcome these evidentiary deficiencies supporting the allegation that he was absent without cause during the return of the verdict. Therefore, the trial court's

---

[4] We acknowledge that, for the first time on appeal, the Commonwealth explicitly agrees with the trial court's refusal to grant a stay of the proceedings, and to receive the verdict *in absentia*, despite its silence during those proceedings.

- 10 -

determination that he was absent without cause was manifestly unreasonable. Alternatively, it also appears to be the result of partiality, given the trial court's assumption of the role of the Commonwealth's advocate in this case. Accordingly, Appellant is entitled to a new trial.

We decline to address Appellant's sentencing claim, as our decision to grant Appellant a new trial renders that issue moot.

Judgment of sentence **vacated**.  Case **remanded** for a new trial. Jurisdiction **relinquished**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/18