J-A18012-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARWIN MAURICE HERRING SR. | : | |
| | : | |
| Appellant | : | No. 796 WDA 2022 |

Appeal from the Judgment of Sentence Entered January 11, 2022
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000722-2020

BEFORE:  BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: December 8, 2023**

Appellant, Darwin Maurice Herring Sr., appeals from the aggregate judgment of sentence of 25 to 117 years' incarceration, imposed after he was convicted by a jury of five counts of delivery of a controlled substance (methamphetamine), 35 P.S. § 780-113(a)(30), criminal conspiracy, 18 Pa.C.S. § 903, and criminal use of a communication facility, 18 Pa.C.S. § 7512(a).  After careful review, we affirm.

A detailed recitation of the facts of Appellant's underlying convictions is not necessary to dispose of the issues he raises on appeal.  We only note that Appellant's drug-delivery and conspiracy convictions were premised on the testimony of a confidential informant, to whom Appellant "sold … methamphetamine he obtained from Shawn Jackson on five occasions in 2019."  Appellant's Brief at 10.  "Because [Appellant] used a telephone to

arrange these sales, he was also convicted of [c]riminal [u]se of a [c]ommunication [f]acility." ***Id.***

Appellant was initially sentenced on January 12, 2022, to an aggregate term of 25 to 127 years' incarceration. However, in response to his timely-filed post-sentence motion challenging his sentence, the court resentenced him on June 14, 2022, to an aggregate term of 25 to 117 years' incarceration. Appellant timely filed another post-sentence motion, again challenging his sentence, which the court denied on July 6, 2022. He then filed a timely notice of appeal, and he complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On August 30, 2022, the court issued a Rule 1925(a) opinion.

Herein, Appellant states two issues for our review:

I. Did the [trial court] … violate [Appellant's] rights under the Fifth, Sixth and/or Fourteenth amendments to the United States Constitution; Article I § 9 of the Pennsylvania Constitution; and/or Pennsylvania Rule of Criminal Procedure 602 by ordering jury selection to proceed in [Appellant's] absence[,] where [the court] did not require the Commonwealth to prove, and the Commonwealth did not prove, that [Appellant's] absence was without cause? For these same reasons, did the trial court err by denying [Appellant's] post-sentence motion for a new trial in the interests of justice?

II. In a case involving non-violent, street level drug dealing, did the trial court abuse its discretion at sentencing by imposing a manifestly excessive, unduly harsh, and unreasonable aggregate sentence of 25 to 117 years of incarceration while failing to consider [Appellant's] personal history, mitigating circumstances, and rehabilitative needs? Was this sentence the product of prosecutorial and judicial vindictiveness and/or an unconstitutional "trial tax" imposed as punishment for exercising a constitutional right to a trial by jury?

Appellant's Brief at 3 (unnecessary capitalization omitted).

Appellant first challenges the fact that the trial court proceeded with jury selection in his absence. Based on the record before us and the parties' briefs, we glean the following, pertinent facts underlying this issue. *See id.* at 4-10. At a pretrial proceeding on September 27, 2021, Appellant and his counsel, James DePasquale, Esq., were notified that jury selection was scheduled to begin on Monday, October 4, 2021, and that the jury trial would commence on October 25, 2021. On October 4, 2021, Appellant failed to appear for jury selection. At 9:10 a.m. that day, the court was joined in chambers by Attorney DePasquale and the prosecutor, and they discussed, on the record, how to proceed in Appellant's absence. *See* N.T. Excerpt from Jury Selection, 10/4/21, at 1. The court acknowledged that the Commonwealth wished to move forward with jury selection because Appellant had proper legal notice that he was to be in court that morning and had failed to appear. *Id.* In response, Attorney DePasquale admitted that "it was made clear" at the proceeding on September 27, 2021, "that both [Appellant] and counsel were to be [in court] at 8 o'clock" that day. *Id.* at 4. Additionally, counsel stated that he had spoken to Appellant two days earlier, *i.e.*, on Saturday, October 2, 2021, and he had "no doubt … that [Appellant] was aware he had to be here." *Id.* Nevertheless, Attorney DePasquale objected to proceeding in Appellant's absence, arguing that "to command someone to be in court, that person has to be subpoenaed." *Id.* Noting that, to his knowledge, Appellant "was not subpoenaed[,]" counsel stated that he was "objecting to proceeding

- 3 -

without him because of that." *Id.* After the parties indicated they had nothing else to place on the record, the court proceeded with jury selection in Appellant's absence. *Id.* at 6. On October 13, 2021, the court issued an order directing, *inter alia*, that the Commonwealth "make every effort through its resources to locate and apprehend [Appellant] in advance of trial." Order, 10/13/21, at 1 (unnumbered). Appellant was thereafter arrested at a hotel in Allegheny County. *See* Sentencing Order, 1/11/22, at 11. He was "found to be in the possession of drugs" and "admitted … that he was using … said drugs." *Id.*

On October 21, 2021, Appellant filed a motion to reinstate bail, and the court held a hearing on that motion on October 25, 2021. There, Appellant explained his absence from jury selection, claiming that he had been in contact with someone who had tested positive for Covid-19, and that he had then tested positive on the morning of jury selection. He alleged that he had attempted to contact Attorney DePasquale via phone and email on Sunday, October 3, 2021, to notify counsel that he did not feel well and that he was going to take a Covid-19 test the next day. However, Appellant did not produce any medical documentation confirming that he had tested positive for Covid-19, or proof that he had emailed his counsel. He also did not claim that he attempted to notify the court that he would be absent from jury selection.

At the close of the hearing, the court denied Appellant's motion to reinstate bail, explaining that Appellant had "failed to provide sufficient evidence to convince the [c]ourt that he in fact had a legitimate medical

- 4 -

excuse" to justify his failure to appear for jury selection. N.T. Hearing, 10/25/21, at 34. The court found that Appellant had instead taken "unilateral action to absent himself from the court proceedings and … used an alleged casual contact with someone who had been exposed to Covid as an excuse to not appear." *Id.*

Now, on appeal, Appellant argues that he is entitled to a new trial because his absence from the jury selection process violated his federal and state constitutional rights, as well as Pennsylvania Rule of Criminal Procedure 602. Specifically, Appellant contends:

> [The trial court] did not require the Commonwealth to prove, and the Commonwealth did not prove, that [Appellant's] failure to appear on the morning of jury selection was without cause. Moreover, [the court] failed to render findings of facts or conclusions of law concerning the requisite "without cause" determination prior to ordering jury selection *in absentia*. Because (a) the Commonwealth did not prove that [Appellant's] absence was without cause, (b) [the court] did not determine [Appellant's] absence was without ca[u]se, and (c) there is no evidence that [the court] exercised judicial discretion before ordering jury selection *in absentia*, [Appellant] respectfully requests and is entitled to a new trial.

Appellant's Brief at 21-22.

Before delving into the specifics of Appellant's arguments, we recognize that:

> The right to trial by jury is guaranteed by the Sixth Amendment to the U.S. Constitution and by the Pennsylvania Constitution, Article I, Section 6 and Section 9. A defendant's right to be present at his or her trial is grounded in the Confrontation Clause of the Sixth Amendment and in the Due Process Clauses of the Fifth and Fourteenth Amendments. The United States Supreme Court has determined that one of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to

- 5 -

be present in the courtroom at every stage of his trial. In addition, the High Court "has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.

The High Court has explicitly affirmed that *voir dire* is a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present. The determination that *voir dire* is a critical stage of trial flows directly from the recognition that a defendant's "life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers in the selection of jurors." However, certain decisions regarding the conduct of *voir dire* are properly made by counsel alone.

***

Article I, § 9 of the Pennsylvania Constitution and Pennsylvania Rule of Criminal Procedure 602 guarantee the right of an accused to be present in the courtroom at every stage of a criminal trial. Rule 602(a) provides that the defendant shall be present at every stage of the trial including the impaneling of the jury. As we have recently determined, this rule plainly states that the defendant has the right to observe every phase of the trial, including the impaneling of the jury. In addition, the jury selection process is crucial to the preservation of the right to an impartial jury as guaranteed by Article I, § 9 of the Pennsylvania Constitution.

However, like the U.S. Supreme Court, this Court has recognized that the right to be present in the courtroom during one's trial is not absolute.

**Commonwealth v. Hunsberger**, 58 A.3d 32, 37-38 (Pa. 2012) (cleaned up).

For instance,

[u]nder the constitutional standard, the right to be present at trial is not guaranteed when presence would be useless, or the benefit but a shadow. Due process only requires the defendant's

- 6 -

presence to the extent that a fair and just hearing would be thwarted by his absence. As such, the constitutional rights at issue are circumscribed by a prejudice standard – a defendant must show that his absence from a trial proceeding could have undermined the fairness of the proceeding.

However, Rule 602 provides for more protection than offered by either the United States or Pennsylvania Constitutions. Rule 602 dictates that a defendant "shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, … except as otherwise provided by this rule." Pa.R.Crim.P. 602(A) (emphasis added). The only exception provided by Rule 602 is where the defendant is "absent without cause…." ***Id.***

***Commonwealth v. DeCosta***, 197 A.3d 813, 816 (Pa. Super. 2018) (cleaned up; emphasis omitted).

Additionally, the Commonwealth has the burden of proving, "by a preponderance of the evidence[,] that the defendant is absent 'without cause' and that he knowingly and intelligently waived his right to be present." ***Commonwealth v Hill***, 737 A.2d 255, 259 (Pa. Super. 1999); ***see also*** Pa.R.Crim.P. 602 (Comment).

[W]hen a defendant is unaware of the charges against him, unaware of the establishment of his trial date or is absent involuntarily, he is not absent "without cause" and therefore cannot be tried *in absentia*. ***Commonwealth v. Bond***, [693 A.2d 220,] 223 [(Pa. Super. 1997)] (citing ***Commonwealth v. Sullens***, [619 A.2d 1349 (Pa. 1992)]).

In ***United States v. Tortora***, 464 F.2d 1202 (2d Cir.), *cert. denied*, 409 U.S. 1063 … (1972), the Court of Appeals for the Second Circuit set forth a list of factors the trial court must balance before exercising its discretion to proceed with trial in the defendant's absence:

[T]he likelihood that the trial could soon take place with the defendant present; the difficulty of rescheduling, particularly in multiple-defendant trials; the burden on the Government in having to undertake two trials[]….

- 7 -

> *Id*. at 1210. Our Supreme Court adopted the *Tortora* test in *Commonwealth v. Wilson*, … 712 A.2d 735 ([Pa.] 1998), but emphasized that the list of factors was not exhaustive. Moreover, *Wilson* held that the trial court is not required to postpone the trial in order to weigh such factors. [*Id.*] … at 739.

*Hill*, 737 A.2d at 259 (Pa. Super. 1999) (footnote omitted).

Instantly, we first address Appellant's argument that his constitutional rights were violated by his absence at jury selection. Appellant acknowledges that he "bears the burden of demonstrating prejudice, or that his absence from the proceedings undermined their fairness." Appellant's Brief at 24 (citation omitted). In this vein, he argues:

> Our Supreme Court has recognized that "the determination that *voir dire* is a critical stage of trial flows directly from the recognition that a defendant's life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers in the selection of jurors." *Hunsberger*, 58 A.3d at 37. Jury selection "is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice, or predisposition about the defendant's culpability." *Gomez v. United States*, 490 U.S. 858, 873 (1989) (cleaned up). A criminal defendant's interest in participating in the selection of the very people who will decide his fate is particularly acute where, as here, the defendant is Black and is being tried by jury in an overwhelmingly white locale.
>
> [Appellant's] exclusion from jury selection impaired his right to exercise peremptory challenges, which often are made only after a prospective juror's non-verbal cues such as body language, facial expressions, eye contact, general demeanor toward the particular defendant on trial may be assessed. Under these circumstances, [Appellant's] presence at his jury selection would be far from "useless, or the benefit but a shadow." *DeCosta*, 197 A.3d at 816. Indeed, there is little question at all that [Appellant's] presence at jury selection would have "contribute[d] to the fairness of that procedure[,]" *Hunsberger*, 58 A.3d at 37, and that the fairness of his jury selection proceeding was "thwarted by his absence." *DeCosta*, 197 A.3d at 816.

Appellant's Brief at 38-39.

Appellant's vague and speculative prejudice argument is unconvincing. We note that the transcript of the jury selection proceeding is contained in the record before us, yet Appellant does not identify anything that occurred during that proceeding that caused him prejudice by his absence. For instance, he does not point to any aspect of the *voir dire* to which he would have objected had he been present, or identify anything in the record indicating that any juror selected had formed a fixed opinion or been otherwise subject to disqualification for cause. *See Commonwealth v. Ellison*, 902 A.2d 419, 423 (Pa. 2006) ("The purpose of *voir dire* is to provide an opportunity to counsel to assess the qualifications of the prospective jurors to serve. It is therefore appropriate to use such an examination to disclose fixed opinions or to expose other reasons for disqualification.") (citations omitted). In other words, Appellant does not claim, in any specific manner, that the jury chosen in his absence was incompetent, unfair, biased, or prejudiced against him, and he does not point to any portion of the record that would support such a claim. *See id.* ("It is well settled that the sole purpose of examination of jurors under *voir dire* is to secure a competent, fair, impartial and unprejudiced jury."). Therefore, Appellant has not demonstrated that his absence from jury selection undermined the fairness of that proceeding, or the fairness of his trial overall. Accordingly, Appellant's constitutional challenge to the court's conducting jury selection in his absence is meritless.

We next address Appellant's claim that Rule 602(A) was violated by the jury selection *in absentia*. Appellant insists that the Commonwealth failed to meet its burden of proving that his absence was without cause, complaining that "the Commonwealth presented nothing at all concerning the reasons for [Appellant's] absence or, as the case law has suggested, evidence ruling out a plausible explanation for [his] absence." Appellant's Brief at 28 (citations omitted). For instance, "[t]he record does not reflect that any attempt was made by the Commonwealth to ascertain [Appellant's] whereabouts or discover the reasons for his nonappearance." *Id.*

> Appellant further maintains that the trial court
>
> was required to determine whether [Appellant's] absence was without cause, and then to balance [Appellant's] constitutional right to be present against the judicial economy interests described in **Wilson**. [It] did neither. There is simply no indication that [the court] exercised discretion in ordering jury selection *in absentia*, or even that [the court] viewed the matter as one calling for the exercise of his discretion. Critically, [the court] committed an error of law in failing to even render a legal determination that [Appellant's] absence was without cause, as was his obligation, before ordering jury selection to proceed *in absentia*.

*Id.* at 30-31. Appellant concludes that, had the trial court properly considered the **Tortora** factors, and the other relevant circumstances, it would have postponed the jury selection proceeding. Finally, Appellant contends that "this Court may not countenance the trial court's reasoning" that Appellant "took unilateral action to absent himself from court proceedings[,]" as that determination was made based on facts presented at hearings **after** the

decision to proceed with jury selection *in absentia* had been made. *Id.* at 34 (citation omitted).

After carefully considering Appellant's arguments, we conclude that no relief is due. Initially, Appellant cites *Hill* to support his argument that the Commonwealth was required to investigate the reasons for Appellant's absence, or present evidence "ruling out a plausible explanation for [his] absence." *Id.* at 28. In that case, Hill had signed two subpoenas ordering him to appear for trial in two separate cases on February 19, 1997. *Hill*, 737 A.2d at 257. Nevertheless, Hill failed to appear in court on that date and, after "[t]he court granted two continuances while the Commonwealth made several attempts to locate [Hill]," trial commenced in his absence. *Id.* Hill also failed to appear at his subsequent sentencing, and he was sentenced *in absentia*. *Id.* at 258. On appeal, we found no abuse of discretion in the court's proceeding without Hill there, reasoning:

> A complete review of the record reveals that [Hill] was fully aware of the charges against him and of his original trial date. In fact, he signed two subpoenas ordering his appearance on February 19, 1997. When he failed to appear on that date, the court allowed two continuances. However, [Hill] also failed to appear on the relisted trial dates. [Hill] was on bail at the time and, therefore, had an obligation to stand trial and submit to sentencing if found guilty. To date, he has failed to offer any explanation for his continued absences.

*Id.* at 259. We also noted that the Commonwealth had made "numerous attempts" to locate Hill, including looking for him at his last known addresses, as well as hospitals, custodial facilities, and the morgue. *Id.*

Instantly, we first point out that Attorney DePasquale never requested a continuance so that attempts could be made to locate Appellant. Additionally, counsel **only** objected to proceeding in Appellant's absence on the basis that he was **not subpoenaed** to be in court on the day of jury selection. **See** N.T., 10/4/21, at 4-5. Attorney DePasquale did "not deny in any way that it was made clear last Monday that both [Appellant] and counsel were to be [in court] at 8 o'clock" on October 4, 2021, "and that this case was going to be tried the 25th, 26th and 27th of October." **Id.** at 4. However, counsel stated: "To my knowledge, [Appellant] was not subpoenaed and I am objecting to proceeding without him because of that." **Id.** at 4-5. Notably, counsel never objected on the basis that the Commonwealth had failed to meet its burden of showing that Appellant was absent without cause, thus waiving this argument for our review. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In any event, even if not waived, we would conclude that any ostensible violation of Rule 602 would be harmless error in this case. As set forth, *supra*, we have determined that Appellant's constitutional rights were not violated by his absence from jury selection, as he was not prejudiced. This Court has declared that, as a general matter, "non-constitutional violations of Rule 602(A)" are susceptible to harmless error analysis. **Commonwealth v. Williams**, 959 A.2d 1272, 1283 (Pa. Super. 2021). Harmless error exists where, *inter alia*, "the error did not prejudice the defendant or the prejudice

was *de minimis*." ***Commonwealth v. Stokes***, 78 A.3d 644, 654 (Pa. Super. 2013).

Here, we discern no prejudice to Appellant by his absence from the jury selection. Appellant's attorney was present for the selection of the jurors, and we presume that counsel effectively represented Appellant's interests at that proceeding. ***See Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987) ("We … presume that counsel is acting effectively."). Additionally, as explained above, the record contains the transcript of the jury selection proceeding, yet Appellant does not identify any objection or opposition to a potential juror that he would have wished to raise. He also does not explain any way in which he was prejudiced by the jurors who were ultimately chosen. Thus, we cannot discern any, non-speculative reason that conducting the jury selection in Appellant's absence could have contributed to the verdict. Accordingly, we would conclude that even if Rule 602(A) was violated in this case, that error was harmless, and Appellant's first issue does not warrant relief.

Appellant next challenges the discretionary aspects of his sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether [the]

- 13 -

appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, … 909 A.2d 303 ([Pa.] 2006).  Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.  ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, … 831 A.2d 599 ([Pa.] 2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis.  ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007).  A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra, supra*** at 912–13.

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Appellant filed a timely appeal, he preserved his claims in a post-sentence motion, and he has included a Rule 2119(f) statement in his appellate brief.  Therein, Appellant claims that the court's imposition of consecutive, aggravated range sentences was an abuse of discretion where he committed non-violent, "street level drug deals," and his criminal history also consisted of only non-violent offenses.  Appellant's Brief at 41, 42.  He also argues that his sentence is excessive in light of his character and mitigating circumstances, and that the aggregate term "was improperly influenced by prosecutorial vindictiveness" and a "trial tax" imposed in retaliation for his exercising his constitutional right to trial.  ***Id.*** at 42, 43.

We conclude that Appellant's arguments raise a substantial question for our review. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1271-72 (Pa. Super. 2013) (concluding the appellant's claim that the imposition of consecutive sentences was disproportionate to his crimes, and that the court disregarded the nature and circumstances of his offense, presents a substantial question); *Commonwealth v. Perry*, 883 A.2d 599, 602 (Pa. Super. 2005) (finding an excessive-sentence claim, in conjunction with an assertion that the court did not consider mitigating factors, raises a substantial question); *Commonwealth v. Roden*, 730 A.2d 995, 997 (Pa. Super. 1999) (holding that reliance on impermissible sentencing factors can raise a substantial question). Thus, we proceed to the merits of his arguments, mindful that,

> [s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

We first address Appellant's claim that his sentence is the result of prosecutorial vindictiveness and a 'trial tax' due to his exercising his right to trial. He argues that this fact is "easily establish[ed]" where the Commonwealth's pre-trial plea offer was eight to 16 years' imprisonment, yet at sentencing, it requested a term of 60 to 120 years' incarceration.

Appellant's Brief at 54, 55. Appellant further avers that the trial court's refusal to require the Commonwealth to address this disparity "fully exposes the trial court's bias against [Appellant] and its adoption of the Commonwealth's vindictiveness as its own." *Id.* at 56.

In response, the Commonwealth avers:

[Appellant's] "prosecutorial vindictiveness" argument goes nowhere: The trial court "rejected the Commonwealth's sentencing recommendation and further had no involvement or knowledge of the Commonwealth['s] pretrial offer to resolve the case." [Trial Court Opinion,] 6/14/2022, … [at] 25 (emphasis added); *see id.* (the trial court "did not remotely adopt the Commonwealth's recommendation and fashioned an individualized sentencing scheme for [Appellant] based upon the facts"). Lacking contrary evidence, [Appellant] resorts to baseless accusations of bias and rhetoric insulting the trial court's findings. [*See, e*].*g.*, [Appellant's] Br[ief at] 56 (calling the court's reasoning "farcical," based on "obviously unjustifiable logic," "bias[ed]," and "no doubt [made] at the Commonwealth's urging"). [Appellant's] bluster fails to show a substantial question or a "manifest abuse of discretion," as required.

Finally, [Appellant's] "trial tax" argument fails as well. With full knowledge of his own criminal conduct in this case, his significant criminal history, and the nature of the Commonwealth's favorable plea offer, [Appellant] rejected the offer (likely against counsel's advice), brazenly fled from the court's authority during the very jury trial that he demanded in order to use drugs, and then acted in a threatening and violent manner toward the Commonwealth and court, destroying court property, when the overwhelming evidence of his crimes persuaded the jury to find him guilty on all counts.[1] True, the plea offer was lower than the sentence

---

[1] Here, the Commonwealth refers to the fact that,

[a]s the trial concluded, "a scuffle … occur[ed] in the courtroom," an incident that [Appellant's] brief does not mention. [N.T. Trial, 10/27/2021,] at 46. Specifically, "[a]fter the jury's excusal from the [c]ourtroom and within seconds of the adjournment of the

*(Footnote Continued Next Page)*

imposed. But that does not make the sentence a "trial tax"; instead[,] it was the natural consequence of [Appellant's] inveterate criminal behavior.

Besides, as [Appellant's] own cited law review article acknowledges (*see* [Appellant's] Br[ief at] 62), the "[U.S.] Supreme Court has upheld the imposition of longer sentences on those who refuse to plead guilty," Hessick & Hessick, Recognizing Constitutional Rights at Sentencing, 99 Cal. L. Rev. 47, 62 (2011) (citing, for example, ***Corbitt v. New Jersey***, 439 U.S. 212, 221-24 (1978)). Indeed, "[s]tate[s] may [constitutionally] encourage a guilty plea by offering substantial benefits in return for the plea," and the High Court has "unequivocally recognize[d] the constitutional propriety of extending leniency in exchange for a plea of guilty and of not extending leniency to those who have not demonstrated those attributes on which leniency is based." ***Corbitt***, 439 U.S. at 221-24; ***see also, e.g.***, ***Bordenkircher v. Hayes***, 434 U.S. 357, 364 (1978) ("While confronting a defendant with the risk of more severe punishment [for going to trial] clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable — and permissible — attribute of any legitimate system which tolerates and encourages the negotiation of pleas[.]").

Commonwealth's Brief at 31-33.

We agree with the Commonwealth. Moreover, just before imposing

Appellant's sentence, the trial court stated that it does "not punish defendants

---

proceeding while [the trial judge] was still on the bench, [Appellant] left counsel's table and the custody of the Blair County Sheriff, grabbed a stainless steel pitcher from counsel's table and crossed the courtroom while hurling the pitcher toward the prosecution's table. The pitcher smashed a large screen television situated near the prosecution team," while [Appellant's] "family, who [was] sitting in the gallery, crawled over the jury box in an effort to reach [Appellant], who was being given commands from sheriff deputies." [Trial Court Opinion,] 6/14/2022[,] … [at] 4. The court described the incident as "almost an all-out fiasco in the courtroom." [N.T. Sentencing,] 1/11/2022[,] … [at] 3-4.

Commonwealth's Brief at 7.

for exercising their right to take a case to trial[,]" and that instead, it fashioned an "individualized [sentence] to fit the convictions handed down by the jury in this case, taking into account the entirety of the record, [Appellant's] history, his rehabilitative needs and consistent with the community protections." N.T. Sentencing at 45. We take the court at its word. Thus, as the record does not demonstrate that Appellant was punished for his decision to proceed to trial, no relief is due.

We next consider Appellant's contention that the court's imposition of an aggregate term of 25 to 117 years' imprisonment — consisting of seven, consecutive, aggravated-range sentences — is unduly harsh given the non-violent nature of his crimes and his non-violent criminal history, as well as his personal history, characteristics, and mitigating circumstances of his case. He details the mitigating circumstances the court allegedly failed to consider, including his "tough upbringing" surrounded by drug and gang activity, "that three of his brothers and one of his own sons have been victims of homicide[,]" that he is a "loving and supportive father" and has "made *bona fide* attempts, especially in recent years, to earn an honest living by opening a barber shop and operating a food and ice cream truck[,]" and that he "has a host of health conditions" that "result in severe breathing problems." Appellant's Brief at 47 n.14. According to Appellant, "[t]he trial court did not mention a single one of these facts about [him] in rendering its sentence." *Id.* (emphasis omitted).

Instead, he claims the trial court "cruelly portray[ed him] as nothing more than a serial recidivist with no rehabilitative potential[,]" which was

"both inaccurate and dehumanizing…." *Id.* at 48. Appellant insists that the court "dramatically overstates [his] past opportunities to 'revise his behavior' and unacceptably insinuates that [Appellant] is simply irremediable. This is not so." *Id.* Appellant then explains that, although he has been sentenced to five separate terms of imprisonment, "only one of them [was] significant enough to have resulted in state time." *Id.* at 49.

Again, we conclude that no relief is due. We rely on the thorough and thoughtful sentencing explanation offered by the trial court in its decision ruling on Appellant's post-sentence motions:

### i. Sentences imposed outside of the sentencing guidelines

In cases where a court imposes a sentence outside of the sentencing guidelines, the court must give a contemporaneous statement of reasons in support of its sentence. *See* 42 Pa.C.S.[] § 9721([b]). [The Superior C]ourt has stated:

> [A sentencing judge] … must demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentence in court may deviate from the guidelines, if necessary to obtain a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact of the life of the victim in the community, so long as it also states a record the factual basis and specific reasons which compelled it to deviate from the guideline range.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1264 (Pa. Super. 2012)(citation and brackets omitted). However, "if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable, the sentence will be upheld." *Commonwealth v. Smith*, 863 A. 2d 1172, 1177-[]78 (Pa. Super. 2004). *See Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007) (noting difficulty of defining inquiry into reasonableness of sentence). At sentencing in the case at hand, this [c]ourt made the following pertinent statements:

The [c]ourt notes that this is a deviation from the guidelines. The [c]ourt has considered the guidelines, the presentation of the parties, the sentencing memorandum, the information in the [presentence investigation report (PSI)] and the presentations made this date by [Appellant's] friends and family. We believe the guidelines depreciate the seriousness of the offenses to the extent that they do not acknowledge the significant prior history of [Appellant] in the criminal justice system and the need to protect the public. We believe [Appellant] has been offered numerous opportunities to revise his behavior. The [c]ourt would note that there is an overwhelming need, we believe, based upon this behavior to protect society…[. T]he sentence imposed takes into account the record, the Commonwealth's reduction in charges from the Grand Jury Presentment to the jury tendering its verdicts, all mitigating evidence offered by [Appellant] and his history…. The [c]ourt would note … that [Appellant] so far has demonstrated that he is a poor candidate for rehabilitation. He has a pattern of little time passing between arrests or between supervision[,] … with arrest[s] or … violations while on supervision. Additionally, [Appellant] appears to be a career criminal beginning when he was a juvenile. The [c]ourt would note that from ages 16, 18-25, 28-29, and 34, [Appellant] was consistently in and out of the criminal justice system[,] and that does not include the numerous arrests for which [Appellant] was adjudicated guilty. Additionally, the [c]ourt agrees that [Appellant's] behavior has created an impression with this [c]ourt that he fails to recognize the importance of authority. The [c]ourt would note by way of reference as an example his unilateral absenting himself from jury selection, the failure to provide a legitimate medical excuse when given the opportunity to purge himself[,] with knowledge of the outstanding bench warrant between jury selection and the start of the trial, [and] that he was apprehended approximately one and a half hours away from what he has declared as his home in Blair County.

This belies his remarks that he was quarantining, [and] … upon his apprehension in a hotel in Monroeville, Pennsylvania, he was found to be in the possession of drugs. [Appellant] today has admitted himself that he was using said drugs, [and] his remarks that he kept in contact with

his attorney and bail bondsman but had no[] contact with the [c]ourt is troubling.

Additionally, [Appellant], by his behavior, demonstrated contempt and disregard for this [c]ourt when he engaged in almost a brawl[-]like atmosphere in the [c]ourtroom when he grabbed a stainless steel pitcher, hurling it and crossing the [c]ourtroom at police officers with his family crawling over the jury box[,] and also risked being tasered (*sic*) in that event.

While this [c]ourt is not basing this sentence on … that … activity, it does show a continued disregard … [and lack of] respect for authority and for the [c]ourt. These are only some examples of the [c]ourt's concerns about [Appellant's] ability to be rehabilitated and [why we] believe that the sentence of incarceration for a lengthy period of time is appropriate.

While the sentencing guidelines compute a prior record score and an offense gravity score, the guidelines do not measure the length of time between arrests or convictions, nor [Appellant's] failures to avail himself of services in order to show his ability to be a law[-]abiding citizen. The guidelines do not take into account the abstract attitudes and behaviors that [Appellant] demonstrates toward authority again and again, either through his unsuccessful prior supervision or the examples of actions he took in the case at bar.

### ii. Sentence not manifestly excessive

[Appellant] acknowledges that he has a significant prior record of delivering drugs and amassed a series of convictions for the same conduct. [Appellant] also agrees that the [c]ourt did not exceed the statutory maximums.[2] (Paragraph 10 of [Appellant's] Post Sentence Motion). Counsel lists the maximum sentence imposed and argues that the [c]ourt exceeded the maximum sentence "recommended[,"] citing the sentencing guidelines for [Appellant]. **See** [Appellant's] Post Sentence Motion, Paragraph 9 [(containing … a chart [with] the standard and aggravated ranges of sentence from the guidelines, but also includ[ing] a calculation of twice those amounts, presumably suggesting the "recommended" maximum flowing from the guideline ranges[)]. The [d]efense uses the guidelines to aver that the maximum sentences are 92½ years above the high end of the standard guideline range. (**See** Paragraph 11 of the Post Sentence

Motions).  These types of statements are for flare in the defense argument, but are a deliberate misuse of the information and incorrect application of the guidelines.  The defense calculation of these "maximums" are not part of the sentencing guidelines.  204 Pa.Code [§] 303.1 *et seq*.  Sentencing guidelines are not used as a tool for setting the maximum sentences imposed upon a [d]efendant.

> [2] With the exception of Count 6, which is corrected under separate order this date.

[Appellant's] counsel wishes to focus only on her interpretation of the convictions[] as nonviolent and street level deals.  First, these controlled purchases were for large amounts of methamphetamine.  The defense characterization of [Appellant's] activities also fails to account for other matters that the [c]ourt is tasked with evaluating when fashioning an individualized sentence.  Such factors include his lack of rehabilitative potential[,] with 17 prior convictions and 10 confinements as set forth in the PSI, as well as his complete disregard for the law.  The [c]ourt referenced his history and the contents of the PSI which revealed that: [Appellant's] criminal activity spanned from the time he was a juvenile and continued even while the instant action was pending.  Of the 17 prior convictions, several were for drug-deliveries.  He served a three (3) to six (6) year sentence in the state system.  This sentence represents the lack of criminal activity in his PSI from 2012 to 2015.  Upon his release[,] the interaction with law enforcement immediately resumes.  He had 5 paroles granted and one parole revoked.  This recidivist history was cited by the [c]ourt in the sentencing order.  Additionally, and as set forth under the discussion of above, [Appellant's] disregard for the law goes beyond his voluminous prior criminal record and is evident in the other behavior toward the authority of the [c]ourt as cited on the record; including his failure to voluntarily participate in jury selection; his failure to provide medical documentation to support his COVID related excuse; his apprehension in another jurisdiction with drugs; his references to the [c]ourt by first name (during trial and at the post[-]sentence proceedings); his behavior in [c]ourt leaving sheriff's custody; and[,] while the Judge was still on the bench[,] throwing a pitcher at officers and damaging the [c]ourtroom equipment in the process.  []*See Commonwealth v. Peck*, 202 A.3d 739, 749 (Pa. Super 2019) [(]wherein defendant's sentence of 20 to 40 years and statutory maximum sentence upheld).

- 22 -

This case stands in contrast to the record in ***Commonwealth v.*** [***Coulverson***], 34 A.3d 135 (Pa. Super. 2011), cited by the defense. The Superior Court in [***Coulverson***] vacated the statutory maximum sentence where the trial [c]ourt offered only a general statement that the sexual assault and other crimes had a lasting impact upon the victim, her family and friends. The trial [c]ourt in [***Coulverson***] did not acknowledge the sentencing guidelines or provide any detailed rationale for the sentence. The appellate [c]ourt in [***Coulverson***] stated "…we are troubled by the [c]ourt's cursory treatment of so weighty a matter, as the 90 year aggregate maximum potentially consigns a 19 year old defendant with mental health problems to life in prison *without even nod to relevant sentencing factors*." ***Id.*** [a]t 146. ([e]mphasis added). The [c]ourt further said "the record reveals scant consideration of anything other than victim impact and the [c]ourt's impulse for retribution on the victim's behalf." ***Id.*** at 148.

In fashioning the instant sentence, the [u]ndersigned carefully evaluated all facets of Sections 9721(b) and 9781(d) as it related to this specific [Appellant] and to his convictions for selling larger quantities of methamphetamine to an individual, known to him as an addict[,] and conspiring with others to deal drugs. It was an individualized sentence, which took into account his poor history in the community with 17 prior arrests and his inability to recognize and adhere to authority. Incorporated herein by reference hereto is the sentencing order of January 11, 2022[,] and the record of the sentencing hearing.

### iii. Consecutive sentences

With regard to the imposition of consecutive sentences, the Pennsylvania Superior Court has stated:

> [T]he imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentenc[ing] [c]ourt. Longstanding precedent of this Court recognizes that 42 Pa.C.S.[] § 9721 affords the sentencing [c]ourt discretion to impose its sentence concurrently []or consecutively to other sentences being imposed at the same time or to sentences already imposed. A challenge to the imposition of a consecutive rather than a concurrent sentence does not present a substantial question regarding the discretionary aspects of sentence. We see no reason why [a defendant] should be afforded a volume discount for his crimes by having all sentences run concurrently.

> However, we have recognized that a sentence can be so manifestly excessive in extreme circumstances that may create a substantial question. When determining whether [a] substantial question has been raised, we have focused upon whether the decision to sentence consecutively raises the aggregate sentence to, what appears [upon] its face to be[,] an excessive level in light of the criminal conduct in the case. ***Commonwealth v. Zirkle***, 107 A.3d 127, 132 (Pa. Super. 2014) (citations omitted).

> In the case before this [c]ourt, [Appellant] has a prior history of drug trafficking offenses. The evidence established the jury convicted him of selling large quantities of methamphetamine on more than one occasion. Methamphetamine is a highly dangerous substance. Based upon the testimony of record, he was aware that the Commonwealth's witness struggled with addiction. [Appellant] had been released on bail and failed to appear for jury selection. His failure to appear was determined to be without cause. His veracity as far as the reason for his nonappearance was questioned and was found to be lacking. [Appellant] established a history of being incorrigible. He had numerous convictions over years and prior ignored opportunities for rehabilitation. [Appellant] failed to adhere to appropriate behavior in [c]ourt and on previous supervision. This [c]ourt, like the ***Zirkle*** [C]ourt, found no reason to give [Appellant] a volume discount in his sentencing scheme….

Trial Court Opinion, 7/12/21, at 17-24 (some citations omitted, some formatting altered).

We conclude that the court convincingly addressed, and rejected, Appellant's sentencing challenges. The record as a whole demonstrates that the court considered the various sentencing factors, mitigating circumstances, history, and characteristics of Appellant, and determined that a lengthy term of incarceration was warranted. Appellant's arguments on appeal fail to establish that the court "acted with manifest unreasonableness, or partiality, prejudice, bias, or ill-will," or that its sentencing decision had "such lack of

support as to be clearly erroneous." ***Commonwealth v. Crump***, 995 A.2d 1280, 1282 (Pa. Super. 2010) (defining 'abuse of discretion' in the sentencing context). Therefore, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/8/2023